**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x

KELVIN HUNTER,

                  Plaintiff,

           v.

DEBMAR-MERCURY LLC, IRA BERNSTEIN,
MORT MARCUS, & JOHN and JANE DOE 1-5
(Employees of Defendant DEBMAR-MERCURY
LLC, and/or corporations/subsidiaries of
DEBMAR-MERCURY LLC not yet known),

                  Defendants.

------------------------------------------------------------------x

ECF Case

Case No. 1:22-CV-01687 (PGG)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR CERTIFICATION OF AN**
**INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B)**
**AND STAY PENDING APPEAL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

RELEVANT PROCEDURAL BACKGROUND ...................................................... 2

LEGAL STANDARDS ....................................................................................... 3

ARGUMENT .................................................................................................... 4

I.      Interlocutory Appeal Is Warranted to Permit the Second Circuit to Resolve the
        Sole Question Presented in This Action. ............................................. 4

        A.      It Is Undisputed That the Order Involves a Controlling Issue of Law and
                That an Appeal May Lead to the Action's Immediate Termination. ..................... 4

        B.      There Is Substantial Ground for Difference of Opinion as to Whether the
                New York Court of Appeals Would Adopt *Morse*. ................................. 6

                1.      *Morse*'s Deeply Flawed Reasoning and the Existence of
                        Conflicting Authority Provide Persuasive Data for Disregarding
                        *Morse*. ................................................................. 7

                2.      This Is an Issue of First Impression for the Second Circuit and the
                        New York Court of Appeals Has Repeatedly Taken Up Cases
                        Examining the Liberal Construction of the NYCHRL. ........................... 10

II.     Interlocutory Appeal Is Equally Warranted to Permit the Second Circuit to Certify
        the Question to the New York Court of Appeals. ............................................. 14

        A.      Following Passage of the Restoration Act, the New York Court of Appeals
                Has not Ruled Whether "Marital Status" Includes One's Marriage to a
                Particular Individual. ......................................................... 15

        B.      The Meaning of Marital Status Discrimination Under the NYCHRL Is a
                Significant Public Policy Concern for the City and Its Millions of
                Employees. ..................................................................... 17

III.    This Lawsuit Should be Stayed Pending the Resolution of Defendants' Appeal ............ 20

CONCLUSION .................................................................................... 25

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re Actos Antitrust Litig.*,
    Master File No. 13-CV-09244, 2020 WL 8996696 (S.D.N.Y. Mar. 9, 2020)..................23, 24

*also Zakrzewska v. New School*,
    598 F. Supp. 2d 426 (S.D.N.Y. 2009), *certified questions answered by* 928
    N.E.2d 1035 (N.Y. 2010)...........................................................................................................13

*Aluminum Bahrain B.S.C. v. Dahdaleh*,
    No. Civ. No. 8-299, 2012 WL 5305169 (W.D. Pa. Oct. 25, 2012) ........................................10

*Baker v. Saint-Gobain Performance Plastics Corp.*,
    232 F. Supp. 3d 233 (N.D.N.Y. 2017)....................................................................................14

*Balintulo v. Daimler AG*,
    727 F.3d 174 (2d Cir. 2013).......................................................................................................4

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
    344 F.3d 211, 219-20 (2d Cir. 2003), *certified questions answered by* 818
    N.E.2d 1140 (N.Y. 2004);..........................................................................................................9

*Bluetooth SIG, Inc. v. FCA US LLC*,
    Case No. 2:18-cv-01493-TL, 2022 WL 789480 (W.D. Wash. Feb. 24, 2022) ......................21

*Brock Built, LLC v. Blake*,
    686 S.E.2d 425 (Ga. Ct. App. 2009) .......................................................................................16

*Brockett v. Spokane Arcades, Inc.*,
    472 U.S. 491 (1985) (O'Connor, J., concurring) .....................................................................14

*Chan v. City of New York*,
    803 F. Supp. 710 (S.D.N.Y. 1992), *aff'd*, 1 F.3d 96 (2d Cir. 1993) .........................................4

*Chauca v. Abraham*,
    841 F.3d 86 (2d Cir. 2016), *certified questions answered by* 89 N.E.3d 475
    (N.Y. 2017). ...........................................................................................................14, 15, 17, 18

*Chauca v. Abraham*,
    89 N.E.3d 475 (N.Y. 2017).............................................................................................12, 17

*Christoforou v. Cadman Plaza North, Inc.*,
    No. 04 CV 08403, 2009 WL 723003 (S.D.N.Y. Mar. 19, 2009).........................................9, 10

*City of New York v. Golden Feather Smoke Shop, Inc.*,
    597 F.3d 115 (2d Cir. 2010)......................................................................................15, 16, 19

*DeCoursey v. Am. Gen. Life Ins. Co.*,
822 F.3d 469 (8th Cir. 2016) ............................................................10

*Doe v. Bloomberg, L.P.*,
167 N.E.3d 454 (N.Y. 2021) ........................................................12, 18

*Entron, Inc. v. Affiliated FM Ins. Co.*,
749 F.2d 127 (2d Cir. 1984) ...............................................................9

*FDIC v. Loudermilk*,
761 S.E.2d 332 (Ga. 2014) ................................................................16

*FDIC v. Loudermilk*,
984 F. Supp. 2d 1354 (N.D. Ga. 2013), *certified questions answered by* 761
S.E.2d 332 (Ga. 2014) ................................................................16, 17

*FDIC v. Skow*,
741 F.3d 1342 (11th Cir. 2013), *certified questions answered by* 763 S.E.2d
879 (Ga. 2014) ........................................................................16, 17

*FDIC v. Skow*,
955 F. Supp. 2d 1357 (N.D. Ga. 2012) ...................................................8

*Ferring B.V. v. Allergan, Inc.*,
343 F. Supp. 3d 284 (S.D.N.Y. 2018) ....................................................22

*Flexible Prods. Co. v. Ervast*,
643 S.E.2d 560 (Ga. Ct. App. 2007), *overruled on other grounds by FDIC v.
Loudermilk*, 761 S.E.2d 332 (Ga. 2014) .................................................16

*Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*,
No. CV 13-5693, 2015 WL 4397175 (C.D. Cal. June 8, 2015) .............................24

*In re Flor*,
79 F.3d 281 (2d Cir. 1996) .................................................................6

*Florio v. City of N.Y.*,
No. 06 Civ. 6473, 2008 WL 3068247 (S.D.N.Y. Aug. 5, 2008) ..............................5

*Foster v. City of New York*,
No. 14 Civ. 4142, 2018 WL 11323303 (S.D.N.Y. June 18, 2018)............................6

*Gokhberg v. PNC Bank, Nat'l Ass'n*,
No. 17-cv-00276, 2021 WL 421993 (E.D.N.Y. Jan. 6, 2021), *aff'd*, No. 21-
222-cv, 2022 WL 288174 (2d. Cir. 2022) ..............................................9, 10

*Hymes v. Bank of Am., N.A.*,
Nos. 18-CV-2352, 18-CV-4157, 2020 WL 9174972 (E.D.N.Y. Sept. 29, 2020)................24

*In re K F Dairies, Inc. & Affiliates*,
  224 F.3d 922 (9th Cir. 2000) ........................................................................9

*Karayiorgou v. Trustees of Columbia University*,
  No. 150788/18, 2021 WL 143472 (N.Y. Sup. Ct. N.Y. Cnty., Jan. 14, 2021) ......................10

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in
  Amministrazione Straordinaria*,
  921 F.2d 21 (2d Cir. 1990), *vacated on other grounds*, 937 F.2d 44 (1991).........................4, 5

*Lehman Bros. v. Schein*,
  416 U.S. 386 (1974)........................................................................................2

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  739 F.3d 45 (2d Cir. 2013)........................................................................6, 8, 9

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ..........................................................................24

*Makinen v. City of New York*,
  857 F.3d 491 (2d Cir. 2017), *certified questions answered by* 86 N.E.3d 514
  (N.Y. 2017). ...............................................................................................15

*Makinen v. City of New York*,
  86 N.E.3d 514 (N.Y. 2017)........................................................................11, 17

*Manhattan Pizza Hut v. N.Y. State Human Rights Appeal Bd.*,
  415 N.E.2d 950 (N.Y. 1980)..............................................................................7

*Mass. v. U.S. Dep't of Health & Human Servs.*,
  682 F.3d 1 (1st Cir. 2012)................................................................................20

*Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*,
  336 F.3d 801 (8th Cir. 2003) ............................................................................22

*Milord-Francois v. N.Y. State Office of Medicaid Inspector Gen.*,
  635 F. Supp. 3d 308 (S.D.N.Y. 2022)..................................................................9

*Morse v. Fidessa Corp.*,
  165 A.D.3d 61 (N.Y. App. Div. 2018) ........................................................ *passim*

*Owens v. Centene Corp.*,
  No. 20-CV-118, 2022 WL 4641129 (E.D.N.Y. Sept. 30, 2022), *aff'd*, No. 22-
  2765, 2023 WL 5970954 (2d Cir. Sept. 14, 2023) ...............................................13

*Owens v. Centene Corp.*,
  No. 22-2765, 2023 WL 5970954 (2d Cir. Sept. 14, 2023) .....................................13

*Perry v. Brown*,
  671 F.3d 1052 (9th Cir. 2012) ..................................................................20

*United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*,
  521 F. Supp. 3d 265 (E.D.N.Y. 2021) .........................................................5

*Reddington v. Staten Island Univ. Hosp.*,
  511 F.3d 126 (2d Cir. 2007), *certified questions answered by* 893 N.E.2d 120
  (N.Y. 2008). ...................................................................................16, 18

*Regeneron Pharm., Inc. v. U.S. Dep't of Health & Hum. Servs.*,
  510 F. Supp. 3d 29 (S.D.N.Y. 2020).........................................................22

*Romer v. Evans*,
  517 U.S. 620 (1996)...............................................................................20

*Safeco Ins. Co. of Am. v. M.E.S., Inc.*,
  No. 09-CV-3312, 2010 WL 5437208 (E.D.N.Y. Dec. 17, 2010) .....................21

*Scallon v. Scott Henry's Winery Corp.*,
  Case No. 6:14-cv-1990, 2015 WL 5772107 (D. Or. Sept. 30, 2015) ..............23

*Sportsinsurance.com, Inc. v. Hanover Ins. Co., Inc.*,
  No. 8:20-CV-0403, 2021 WL 1404581 (N.D.N.Y. Apr. 14, 2021), *rev'd on
  other grounds*, Nos. 21-1967-cv, 21-2063-cv, 2022 WL 16706941(2d Cir.
  2022) ..................................................................................................6

*Sutherland v. Ernst & Young LLP*,
  856 F. Supp. 2d 638 (S.D.N.Y. 2012)........................................................24

*Syeed v. Bloomberg L.P.*,
  203 N.E.3d 630 (N.Y. 2023).............................................................12, 17

*Syeed v. Bloomberg, L.P.*,
  58 F.4th 64 (2d Cir. 2023), *certified question accepted by* 203 N.E.3d 630
  (N.Y. 2023) .........................................................................................12

*Tantaros v. Fox News Network, LLC.*,
  465 F. Supp. 3d 385 (S.D.N.Y. 2020), *aff'd*, 12 F. 4th 135 (2d Cir. 2021)..................5, 6

*Trendsettah USA, Inc. v. Swisher Int'l Inc.*,
  Case No. SACV 14-1664, 2020 WL 11232926 (C.D. Cal. Dec. 2, 2020) .............21

*In re World Trade Ctr. Disaster Site Litig.*,
  503 F.3d 167 (2d Cir. 2007)...............................................................20, 21

*Zakrzewska v. New Sch.*,
574 F.3d 24 (2d Cir. 2009), *certified questions answered by* 928 N.E.2d 1035
(N.Y. 2010) .......................................................................................................4, 15

*Zakrzewska v. New School*,
574 F.3d 24 (2d Cir. 2009), *certified questions answered by* 928 N.E.2d 1035
(N.Y. 2010) ........................................................................................................15

*Zakrzewska v. New School*,
574 F.3d 24 (2d Cir. 2009), *certified questions answered by* 928 N.E.2d 1035
(N.Y. 2010) ........................................................................................................25

**Statutes**

28 U.S.C. § 1292(b) ......................................................................................... *passim*

Ga. Code Ann. § 7-1-490(a) ...................................................................................16

N.Y. Stat. Law § 146 ...............................................................................................19

N.Y. Stat. Law § 147 ...............................................................................................19

NYCHRL § 8-107....................................................................................................10

NYCHRL § 8-130....................................................................................................11

**Other Authorities**

Jessica Finn, *SO 'HAPPY' Wendy Williams' ex Kevin Hunter wins a major court
victory in $10m lawsuit against daytime talk show's production company*, The
U.S. Sun (Sept. 9, 2023, 12:03 ET), https://www.the-
sun.com/entertainment/9035540/wendy-williams-ex-kevin-hunter-lawsuit-
win-production-company/..................................................................................20

N.Y.C. Admin. Code § 8-102 .................................................................................19

## PRELIMINARY STATEMENT

Defendants Ira Bernstein, Mort Marcus, and Debmar-Mercury (hereinafter, "Defendants") respectfully submit this memorandum of law in support of their motion for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b) and for a stay pending appeal. In filing this motion, Defendants recognize that this Court exercised judicial restraint in the spirit of comity between state and federal courts in rendering its Opinion and Order denying Defendants' Motion to Dismiss (hereinafter "the Order"). (ECF No. 40). That said, although the Court ultimately deferred to the First Department's decision in *Morse v. Fidessa Corp.*, 165 A.D.3d 61 (N.Y. App. Div. 2018), pursuant to which the Court held that Plaintiff could maintain a discrimination claim under the New York City Human Rights Law ("NYCHRL") based on his marital status in relation to another person, the Court identified several serious errors with the First Department's analysis.

In order to certify a decision for interlocutory appeal pursuant to § 1292(b), three elements must be present: (1) a controlling question of law; (2) as to which there is a substantial ground for a difference of opinion; and (3) an immediate appeal may advance the ultimate termination of the litigation. Here, Plaintiff cannot possibly contend that the first and third elements are absent, as it is undisputed that a ruling in Defendants' favor on the legal question at hand would lead to the immediate dismissal of the entire action.

Thus, Plaintiff can only seek to oppose this motion on the supposed basis there is not a substantial ground for a difference of opinion. Any such argument would likewise fail, as the Order sets forth numerous flaws in *Morse*'s reasoning. As this Court explained, *Morse*'s expansive view of marital status "is not supported by (1) the ordinary meaning of that term; (2) the NYCHRL's legislative purpose; (3) the Restoration Act's treatment of *Levin* [*v. Yeshiva University*, 96 N.Y. 2d 484 (2001)]; or (4) the broader legislative history of the Restoration Act." Order at 27 n.5. *Morse*'s

1

errors are so serious and numerous that the need for interlocutory review is not only apparent, but compelling.

Resolving this issue efficiently would also serve the public interest. The application of the NYCHRL's liberal-construction provision to employment discrimination claims has proven to be a particularly thorny matter for the federal courts and has led the Second Circuit to certify multiple cases to the New York Court of Appeals in the last several years. A decision here would also help ensure that federal judicial resources are not expended on claims that would not survive if *Morse* is overruled, including a recent lawsuit in which the plaintiff argued that *Morse* extended to alleged discrimination on the basis of *any romantic relationship status*. And as to the definition of marital status specifically, multiple levels of New York state and local government have voiced strongly held views on the proper scope of protection, which further reinforces why an immediate appeal would be in the public's interest.

For these reasons, this case also presents an appropriate opportunity for the Second Circuit, in its discretion, to certify the question for resolution by the New York Court of Appeals, consistent with the Supreme Court's admonition that "where there is doubt as to local law and where the certification procedure is available, . . . . [certification] does, of course, in the long run save time, energy, and resources and helps build a cooperative judicial federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 390-91 (1974) (footnote omitted). Defendants respectfully urge the Court to promote these important purposes of § 1292(b) and permit immediate appeal of the Order, and to stay this action pending the appeal's disposition.

## **RELEVANT PROCEDURAL BACKGROUND**

Plaintiff's sole cause of action is for alleged marital-status discrimination under the NYCHRL. According to the Complaint, Defendants employed Wendy Williams as the host of the popular daytime talk show *The Wendy Williams Show*, and also employed Plaintiff to act as

Executive Producer on the series. Compl. ¶¶ 25, 28, 29, ECF No. 1. The Complaint alleges that Plaintiff was, at the time he worked on the series, Ms. Williams' spouse; that in 2019 Ms. Williams served Plaintiff with notice of her intent to divorce him; and that thereafter Defendants provided him with notice of his termination from *The Wendy Williams Show*. *See id.* ¶¶ 33, 34. Plaintiff claims that Defendants discriminated against him based on his marital status in relation to Ms. Williams.

Accordingly, Plaintiff's claim depends on a construction of "marital status" under the NYCHRL as encompassing marital status in relation to a particular person, and for that proposition Plaintiff relies on the First Department's decision in *Morse*. In moving to dismiss, Defendants argued that *Morse* was wrongly decided and that the definition of "marital status" extends only to marital status as such – *i.e.*, the status of being married or unmarried.

On September 1, 2023, the Court issued its Order denying Defendants' Motion to Dismiss, finding that it lacked "persuasive evidence" to disregard *Morse*. Order at 26-27, ECF No. 40. At the same time, the Order included an extensive, eight-paragraph-long footnote at the Order's conclusion explaining several grounds that would support a decision not to follow *Morse*. The Court stated, in part:

> This Court's conclusion that Defendants have not satisfied the "persuasive evidence" standard does not mean that this Court agrees with Morse's interpretation of "marital status" as used in the NYCHRL. Indeed, Morse's definition of "marital status" is not supported by (1) the ordinary meaning of that term; (2) the NYCHRL's legislative purpose; (3) the Restoration Act's treatment of Levin; or (4) the broader legislative history of the Restoration Act.

Order at 27 n.5, ECF No. 40. This motion for interlocutory appeal now follows.

## LEGAL STANDARDS

Interlocutory appeal is proper where the district court's Order: [1] "involves a controlling question of law"; [2] "as to which there is substantial ground for difference of opinion"; and [3]

"an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). When a question meets the standards set forth in § 1292(b) and "'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)); *see also Zakrzewska v. New Sch.*, 574 F.3d 24, 27 (2d Cir. 2009) (granting interlocutory appeal based on the District Court noting that its "conclusion is not free from doubt." (citation omitted)), *certified questions answered by* 928 N.E.2d 1035 (N.Y. 2010).

## ARGUMENT

**I.    Interlocutory Appeal Is Warranted to Permit the Second Circuit to Resolve the Sole Question Presented in This Action.**

### A.    It Is Undisputed That the Order Involves a Controlling Issue of Law and That an Appeal May Lead to the Action's Immediate Termination.

There can be no dispute that Defendants' Motion to Dismiss "involves a controlling question of law," and that an immediate appeal of the Order denying Defendants' motion "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

As to the first element – a controlling question of law – this action consists of a single count for marital-status discrimination, based only on Plaintiff's theory that one's "marital status" in relation to a specific person is a protected status under the NYCHRL. "[I]t is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 24 (2d Cir. 1990), *vacated on other grounds*, 937 F.2d 44 (1991).[1]

---

[1] "[I]t is not necessary for the resolution of a question to be of great precedential value in order for that question to be 'controlling.'" *Chan v. City of New York*, 803 F. Supp. 710, 733 (S.D.N.Y. 1992) (quoting *Klinghoffer*, 921 F.2d at 24), *aff'd*, 1 F.3d 96 (2d Cir. 1993). The critical issue is that interlocutory review resulting in appellate rejection of the *Morse* Court's interpretation of

That is the case here. Defendants' Motion to Dismiss presents the pure legal question of whether the construction of the definition of marital status advanced by *Morse*, and now Plaintiff's action, is correct as a matter of law. *See Klinghoffer*, 921 F.3d at 24 ("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." (citations omitted)).

This posture equally satisfies the third element under § 1292(b) – the potential to advance the ultimate termination of the litigation. An appellate decision in this action that declines to follow *Morse* would foreclose Plaintiff's sole claim entirely, and the lawsuit would be dismissed. "Courts place particular weight on [this factor]," which is satisfied "if the appeal promises to advance the time for trial or to shorten the time required for trial." *Florio v. City of N.Y.*, No. 06 Civ. 6473, 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008) (internal quotation marks omitted); *Tantaros v. Fox News Network, LLC.*, 465 F. Supp. 3d 385, 392 (S.D.N.Y. 2020) ("Reversal of this Court's Opinion & Order would end this case and would materially advance the ultimate termination of the litigation"), *aff'd*, 12 F. 4th 135 (2d Cir. 2021).

Moreover, "[i]n considering this [third] factor, 'courts must consider the institutional efficiency of both the district court and the appellate court.'" *Tantaros*, 465 F. Supp. 3d at 392 (citation omitted). Here, resolving the issue presented in Plaintiff's case is particularly salient for the efficiency of federal district and appellate courts in cases that arise solely out of the NYCHRL – because there is *no similar claim* that can be brought under any federal or other New York state law. If *Morse* was wrongly decided, then the New York federal courts will likely never

---

"marital status" would control this Court's analysis of, and ultimate disposition of, Plaintiff's discrimination claim. *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 276 (E.D.N.Y. 2021) (The issue "'need not affect a wide range of pending cases' as long as it is controlling in the instant litigation." (citation omitted)).

again have to adjudicate a claim alleging discrimination against one's marital status "in relation to" another.

Accordingly, both the first and third elements squarely favor certification in this action.

**B.      There Is Substantial Ground for Difference of Opinion as to Whether the New York Court of Appeals Would Adopt *Morse*.**

A substantial ground for difference of opinion exists where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Foster v. City of New York*, No. 14 Civ. 4142, 2018 WL 11323303, at *12 (S.D.N.Y. June 18, 2018) (citation omitted); *accord Tantaros*, 465 F. Supp. 3d at 391. When deciding whether a substantial ground for difference of opinion exists, "[i]t is the duty of the district judge … to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (alteration in original) (citation omitted). Even where the district court "rejects Defendants' reading of" the relevant authority, a substantial ground for difference of opinion is found where "fair-minded jurists could reach another result." *Sportsinsurance.com, Inc. v. Hanover Ins. Co., Inc.*, No. 8:20-CV-0403, 2021 WL 1404581, at *8 (N.D.N.Y. Apr. 14, 2021), *rev'd on other grounds*, Nos. 21-1967-cv, 21-2063-cv, 2022 WL 16706941 (2d Cir. 2022).

Here, if the Second Circuit were to review the Order (without further certification to the New York Court of Appeals), the relevant question is whether the Second Circuit may find "'persuasive data'" that the New York Court of Appeals would disagree with *Morse*'s holding. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (citation omitted). As explained below, substantial ground for difference of opinion on this question exists, given that: (i) there is conflicting authority as to the construction of "marital status" under the NYCHRL, as observed in the Court's Order; and (ii) it has proven difficult for authorities to

resolve this issue, as well as the broader issue of how to apply the liberal-construction provision of the NYCHRL.

### 1.    *Morse*'s Deeply Flawed Reasoning and the Existence of Conflicting Authority Provide Persuasive Data for Disregarding *Morse*.

There are multiple, independent grounds for deciding that "persuasive data" indicates that the Second Circuit or the New York Court of Appeals would conclude that the NYCHRL was intended only to protect marital status *as such* and not an employee's marital status in relation to a particular person. At a minimum, multiple sources of authority conflict with and call into question the reasoning and outcome of *Morse*.

Prominently, this Court's Opinion at footnote five recognizes several bases to find *Morse*'s holding "not supported." Order at 27 n.5, ECF No. 40. *First*, as to the ordinary meaning of "marital status," the Order points to authority that this term traditionally refers to "[t]he condition of being single, married, legally separated, divorced, or widowed." *Id.* (quoting *Marital Status*, Black's Law Dictionary (11th ed. 2019)).[2] *Second*, the legislative purpose of the NYCHRL's relevant sections is "focused on discriminatory animus directed at particular groups or classes of people," rather than individual relationships. Order at 27 n.5. *Third*, there is cause to find that *Morse* overstates the Restoration Act's impact on the Court of Appeals' prior decision in *Levin,* which had construed "marital status" under the NYCHRL to include only the traditional definition of marital status *as such*. In response to *Levin*, the NYC Council added "partnership status" as a protected status under the NYCHRL via the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"); *Morse* subsequently concluded that the Restoration Act overturned *Levin*'s holding entirely. *Morse v. Fidessa Corp.*, 165 A.D.3d 61, 67 (N.Y. App. Div. 2018). According to

---

[2] *Accord Manhattan Pizza Hut v. N.Y. State Human Rights Appeal Bd.*, 415 N.E.2d 950, 953 (N.Y. 1980) ("when one is queried about one's 'marital status', the usual and complete answer would be expected to be a choice among 'married', 'single', etc.").

the Order, the Restoration Act "abrogates <u>Levin</u> to the extent that it adds 'partnership status' as a protected status . . . and to the extent that the Act's liberal construction provision is inconsistent with <u>Levin</u>'s reasoning" that denied partners without marital status any protection (Order at 28 n.5, ECF No. 40); "[b]ut <u>Morse</u> errs in concluding that the City Council's abrogation of <u>Levin</u> implies an intent to create a cause of action for marital status discrimination based on the identity of the complainant's spouse." *Id. Fourth*, the Order acknowledges that the legislative history reveals that the NYC Council twice rejected a proposed expanded definition of "marital status" to include exactly the construction that Plaintiff relies upon. *Id.* Accordingly, "<u>Morse</u> errs in concluding that the City Council's abrogation of <u>Levin</u> implies an intent to create a cause of action for marital status discrimination based on the entity of the complainant's spouse." *Id.*[3]

These flaws in Morse are so substantial that an interlocutory appeal is appropriate. *See FDIC v. Skow*, 955 F. Supp. 2d 1357, 1379 (N.D. Ga. 2012) (certifying ruling for appeal even though court did not find persuasive data for disregarding two intermediate state court decisions). The Second Circuit has said: "[E]ven in diversity cases [the Supreme] Court has ... held that while the decrees of lower state courts should be attributed some weight ... the decision is not controlling ... where the highest court of the State has not spoken on the point." *Licci*, 739 F.3d at 48 (quoting *Comm'r of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967).

---

[3] Importantly, *Morse* fails to mention that the 2003/2004 proposed amendments to the NYCHRL would have expanded the marital-status definition to include one's status "in relation to another person" – exactly the protection that *Morse* advocated. Instead, *Morse* elliptically suggests that proposed amendments prior to the Restoration Act "had an anti-nepotism provision in the employment section of the law, further undercutting the argument that employment was beyond the Council's contemplation." *Morse*, 165 A.D.3d at 61. By this characterization, *Morse* avoids mention of the actual change to the marital-status definition that the Council had considered.

As the Court's Order notes, the *Morse* decision acknowledged the 2003/2004 proposed amendments. Order at 19, ECF No. 40. Defendants respectfully suggest, however, that *Morse*'s lack of acknowledgment that the 2003/2004 amendments would have expressly protected one's marital status "in relation to another" is a key omission that undermines the reasoning of *Morse*.

In addition to *Licci*, the Second Circuit and other courts have declined to follow intermediate appellate court decisions in analogous cases. *See, e.g.*, *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 344 F.3d 211, 219-20 (2d Cir. 2003) (stating that although the intermediate decision was the only authority directly construing the statutory language at issue, the decision's reasoning did not "provide[] us with much guidance in predicting how the New York Court of Appeals would decide this issue"; certifying question to the New York Court of Appeals), *certified questions answered by* 818 N.E.2d 1140 (N.Y. 2004); *Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 131-132 (2d Cir. 1984) (disregarding the intermediate-court decision where the New Jersey Supreme Court had not addressed the issue of prejudgment interest awards for non-tort unliquidated damages other than in *dicta*, and intermediate decision directly construed the statute at issue to preclude an award of prejudgment interest); *In re K F Dairies, Inc. & Affiliates*, 224 F.3d 922, 925 (9th Cir. 2000) (declining to follow intermediate state-court decisions "appear to be directly on point," where "[w]e believe[] . . . that the cases are in conflict with generally established principles of insurance contract construction as articulated by" earlier state supreme court decisions). *See also Milord-Francois v. N.Y. State Office of Medicaid Inspector Gen.*, 635 F. Supp. 3d 308, 323-26 (S.D.N.Y. 2022) (though New York Court of Appeals had addressed the question presented only in cases of common-law professional negligence rather than under the NYCHRL, and intermediate decision had directly answered the question under the NYCHRL, earlier precedent provided sufficient data to disregard the intermediate decision).

Regardless, there are presently *conflicting* interpretations in state and federal courts on the question of whether "marital status" encompasses one's statue in relation to a particular person. For example, *Gokhberg v. PNC Bank, Nat'l Ass'n*, No. 17-cv-00276, 2021 WL 421993 (E.D.N.Y. Jan. 6, 2021), *aff'd*, No. 21-222-cv, 2022 WL 288174 (2d. Cir. 2022), and *Christoforou v. Cadman*

*Plaza North, Inc.*, No. 04 CV 08403, 2009 WL 723003 (S.D.N.Y. Mar. 19, 2009) applied *Levin* to

the same question presently before this Court and held that marital status discrimination is limited

to discrimination against those who are married or unmarried and does not apply to discrimination

based on being married to a particular person. *Gokhberg*, 2021 WL 421993 at *6; *Christoforou*,

2009 WL 723003 at *7 n.8. On the other hand, in *Karayiorgou v. Trustees of Columbia Univ.*, No.

150788/18, 2021 WL 143472, at *4-5 (N.Y. Sup. Ct. N.Y. Cnty., Jan. 14, 2021), a state court

reached the opposite conclusion. Though *Christoforou* predated *Morse* and *Gokhberg* did not

acknowledge *Morse*, the *Morse* decision nonetheless stands in direct conflict with those rulings.

Such a conflict likewise demonstrates the existence of a substantial ground for difference

of opinion on the question presented, further warranting certification. "A party may establish that

substantial grounds for difference of opinion exists by demonstrating that different courts have

issued conflicting and contradictory opinions when interpreting" the question. *Aluminum Bahrain*

*B.S.C. v. Dahdaleh*, No. Civ. No. 8-299, 2012 WL 5305169, at *2 (W.D. Pa. Oct. 25, 2012) ("there

is substantial ground for difference of opinion" where the Pennsylvania Supreme Court had not

answered the question presented and "various circuit courts and district courts disagree");

*DeCoursey v. Am. Gen. Life Ins. Co.*, 822 F.3d 469, 476 (8th Cir. 2016) (in predicting how state

supreme court would rule on the relevant question, disregarding state-court intermediate decisions

that "may even be conflicting").

> **2.      This Is an Issue of First Impression for the Second Circuit and the New York Court of Appeals Has Repeatedly Taken Up Cases Examining the Liberal Construction of the NYCHRL.**

Construing marital-status protection under the NYCHRL after the Restoration Act is a

matter of first impression for the Second Circuit and the New York Court of Appeals. Neither

Court has addressed the scope of "marital status" under NYCHRL § 8-107 since the amendment

of the Restoration Act, nor have they weighed in on the scope of "marital status" as it was construed in *Morse*.

As relates to this case, the Second Circuit may find persuasive the Court of Appeals' serial decisions applying the NYCHRL's liberal-construction provision (NYCHRL § 8-130) following the passage of the Restoration Act. Notably, in each of these cases, the Court of Appeals *declined to adopt the broader construction* urged by the plaintiff-employees, an approach at tension with *Morse*'s expansive application of that same provision to the marital-status definition. These cases illustrate the challenges presented in construing the NYCHRL and may guide a reviewing court's approach to Plaintiff's claim here:

- In *Makinen v. City of New York*, 86 N.E.3d 514, 519-21 (N.Y. 2017), the Court accepted certification of the question as to whether the NYCHRL's liberal-construction provision required protection for untreated alcoholism as a "disability," given that (i) the *NYSHRL* and the ADA included such protection, but (ii) the NYCHRL provides that plaintiffs must receive "'***all*** of the protection guaranteed by comparable provisions of State and federal law.'" *Id.* at 519 (emphasis added). The New York Court of Appeals construed the NYCHRL as excluding such protection based on the plain language of the "disability" provision. Despite the statute's liberal-construction provision that would otherwise require the NYCHRL to provide no less protection than its state and federal equivalents, "***the NYCHRL still must be interpreted based on its plain meaning***" (*id.* at 520 (emphasis added)); otherwise, "we would be rewriting the NYCHRL, not merely giving it a broad reading to effectuate its remedial anti-discrimination purpose." *Id.*

11

- In *Chauca v. Abraham*, 89 N.E.3d 475, 478-79 (N.Y. 2017), the Court accepted certification and rejected the theory that punitive damages may be awarded under the NYCHRL "upon *any* showing of liability," rather than upon the specialized bases for punitive damages developed in state common-law. *Id.* at 479. In so holding, the Court relied on the principle that words of technical or special meaning are used by the legislature "not loosely, but with regard for their established legal significance, and in construing a statute a technical meaning should be given to technical words, unless a contrary meaning is unmistakably intended." *Id.* (citation omitted).

- In *Doe v. Bloomberg, L.P.*, 167 N.E.3d 454 (N.Y. 2021), the Court rejected a proposed construction of the NYCHRL's undefined term "employer" that would have included a company's owner and/or principal or founder who was not involved in the violative conduct at issue. *Id.* at 460-61. Finding such a construction inconsistent with the limiting principles otherwise reflected in the statute, the Court declined to rely on the statute's liberal-construction provision, given that "any such broad construction must be *reasonable* and grounded in the language of the local law." *Id.* at 462.

- Most recently, the Court accepted certification from the Second Circuit in *Syeed v. Bloomberg L.P.*, 203 N.E.3d 630 (N.Y. 2023). Though the Court has not yet ruled on the merits, the question presented is whether a nonresident who was denied employment in NYC on an allegedly discriminatory basis can claim injury under the NYCHRL, an issue that may require application of the statute's liberal-construction provision. *See Syeed v. Bloomberg, L.P.*, 58 F.4th 64, 67 (2d Cir. 2023), *certified question accepted by* 203 N.E.3d 630 (N.Y. 2023); *see also* 58 F.4th at 71 n.7 (citing NYCHRL § 8-130).

Indeed, the Second Circuit very recently considered a case where the plaintiff claimed that "the NYCHRL's prohibition against discrimination based on an employee's perceived marital or partnership status extends to **perceived romantic relationships**" generally. *Owens v. Centene Corp.*, No. 22-2765, 2023 WL 5970954, at *1 n.1 (2d Cir. Sept. 14, 2023) (emphasis added). As authority for this expanded definition, the plaintiff relied prominently on *Morse. See Owens v. Centene Corp.*, No. 20-CV-118, 2022 WL 4641129, at *4 n.8 (E.D.N.Y. Sept. 30, 2022), *aff'd*, No. 22-2765, 2023 WL 5970954 (2d Cir. Sept. 14, 2023). The Second Circuit affirmed summary judgment for the defendants without reaching this novel issue of statutory construction, but observed: "We assume without deciding that" the plaintiff's construction of the NYCHRL affords such protection, and that "*[t]he New York Court of Appeals has not yet addressed this issue*." *Owens v. Centene Corp.*, 2023 WL 5970954, at *1 n.1 (emphasis added). The Second Circuit's footnote signals a concern that until either the Second Circuit or the New York Court of Appeals directly addresses the contours of the definition of "marital status," plaintiffs will continue to present ever-expanding constructions of "marital status" under the NYCHRL that will clog the dockets of the New York federal courts. *See also Zakrzewska v. New School*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009) (in connection with certifying order, explaining that "[e]mployment discrimination cases make up substantial portions of the dockets of the district courts in our Circuit. The apparent tendency to press claims under the state and city anti-discrimination laws, either in lieu of or in addition to claims under federal statutes, creates a genuine need for resolution of the vicarious liability standards applicable to employers under those statutes"), *certified questions answered by* 928 N.E.2d 1035 (N.Y. 2010).

In short, resolving the construction of "marital status" as relates to one's marriage to a particular person, particularly in light of continued questions surrounding the statute's liberal-

construction provision, presents a challenging issue not yet resolved by the Second Circuit or the New York Court of Appeals. As Justice O'Connor has observed: "Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when . . . *the state courts stand willing to address questions of state law* on certification from a federal court." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 510 (1985) (O'Connor, J., concurring) (emphasis added).

Combined with the above-referenced authority that calls *Morse* into question, these circumstances establish substantial grounds for a difference of opinion sufficient to certify an interlocutory appeal to the Second Circuit.

## II.    Interlocutory Appeal Is Equally Warranted to Permit the Second Circuit to Certify the Question to the New York Court of Appeals.

An immediate appeal of the Court's order would be appropriate so as to allow the Second Circuit, in its discretion, to certify the question presented to the New York Court of Appeals. *Baker v. Saint-Gobain Performance Plastics Corp.*, 232 F. Supp. 3d 233, 256 (N.D.N.Y. 2017) (noting that a benefit of certifying a question to the Second Circuit is, in turn, "the Second Circuit's power to certify questions of state law to the New York Court of Appeals.") The factors supporting certification to the New York Court of Appeals are compelling: (1) there is an absence of state-court decisions resolving this issue after the amendment of the Restoration Act; (2) the scope of protection for marital status, in conjunction with the liberal construction of the NYCHRL, are important issues of New York public policy; and (3) certification may entirely resolve the litigation. *See Chauca v. Abraham*, 841 F.3d 86, 93 (2d Cir. 2016), *certified questions answered by* 89 N.E.3d 475 (N.Y. 2017).

The *third* factor under this standard is substantially the same as the third element required under 28 U.S.C. § 1292(b) ("an immediate appeal from the order may materially advance the

ultimate termination of the litigation."). As addressed in Part II.A above, this factor is not subject to dispute in this case. *See City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 127 (2d Cir. 2010); *Chauca*, 841 F.3d at 95. As explained below, the *first* and *second* factors for obtaining certification of the question to the New York Court of Appeals are also amply supported.

A.    **Following Passage of the Restoration Act, the New York Court of Appeals Has Not Ruled Whether "Marital Status" Includes One's Marriage to a Particular Individual.**

*Morse* posits that the passage of the Restoration Act entirely overruled the earlier holding in *Levin* that marital status does not extend to one's status of being married to a particular person. The New York Court of Appeals has not yet decided whether it agrees with *Morse*.

This factor weighs strongly in favor of certification. Where the federal court "cannot predict with confidence how the New York Court of Appeals would reconcile the broad, remedial purpose of the NYCHRL with the specific language of" the section at issue, it is appropriate to "defer decision on this appeal" to the state high court. *Makinen v. City of New York*, 857 F.3d 491, 493 (2d Cir. 2017), *certified questions answered by* 86 N.E.3d 514 (N.Y. 2017). For example, in *Zakrzewska v. New School*, 574 F.3d 24, 28 (2d Cir. 2009), *certified questions answered by* 928 N.E.2d 1035 (N.Y. 2010), the Second Circuit certified the question as to whether a particular judicially-created defense to employment sexual harassment and retaliation claims was available under the NYCHRL. The Second Circuit found that the Court of Appeal had not addressed the particular question and, accordingly, found certification appropriate – even though the intermediate New York state court already had answered the question in the negative. *Id.* at 28, 28 n.4.

Similarly, in *Golden Feather Smoke Shop*, on the question of whether the New York Tax Code exempted cigarette sales made on Indian reservations from taxation, two intermediate decisions both answered in the negative, whereas a dissent in one of those decisions argued that

the majority opinions were inconsistent with certain canons of construction and relevant legislative history. 597 F.3d at 124-25. On this basis, the Second Circuit found that "there are a number of factors that may persuade the [New York] Court of Appeals in its review of [the recent intermediate decision] to adopt the rationale of [the] dissent." *Id.* at 126. *See also, e.g.*, *Reddington v. Staten Island Univ. Hosp.*, 511 F.3d 126, 136 (2d Cir. 2007) (lack of definitive authority found where "there is a split of authority—between the lower New York state courts on the one hand and at least some federal district courts in New York on the other"; certifying question of state statutory interpretation to the New York Court of Appeals), *certified questions answered by* 893 N.E.2d 120 (N.Y. 2008).

The examples of *FDIC v. Skow*, 741 F.3d 1342 (11th Cir. 2013), *certified questions answered by* 763 S.E.2d 879 (Ga. 2014), and *FDIC v. Loudermilk*, 984 F. Supp. 2d 1354 (N.D. Ga. 2013), *certified questions answered by* 761 S.E.2d 332 (Ga. 2014), are illustrative as well. Both cases addressed whether the business judgment rule is a defense to state-law negligence claims against bank directors and officers. The Georgia Supreme Court had made "implicit acknowledgment of the [business judgment] rule in a number of [earlier] decisions," recognizing the defense in specific circumstances. *FDIC v. Loudermilk*, 761 S.E.2d 332, 335-36 (Ga. 2014). The legislature then amended the banking code to include the modern standard for director-and-officer liability (Ga. Code Ann. § 7-1-490(a)). Subsequently, two state intermediate courts ruled that the as-amended statute codified the business judgment rule so as to *preclude liability per se* for claims of negligence against bank directors/officers. *Flexible Prods. Co. v. Ervast*, 643 S.E.2d 560, 564-65 (Ga. Ct. App. 2007) (no liability for "ordinary negligence"), *overruled on other grounds by FDIC v. Loudermilk*, 761 S.E.2d 332 (Ga. 2014); *Brock Built, LLC v. Blake*, 686 S.E.2d 425, 431 (Ga. Ct. App. 2009) (no liability for "negligent or careless performance of [] duties"). To

resolve the potential conflict, the courts in *Skow* and *Loudermilk* certified the issue to the Georgia Supreme Court. *Skow*, 741 F.3d at 1346-47; *Loudermilk*, 984 F. Supp. 2d at 1362. The Supreme Court, upon certification, overturned the intermediate decisions with respect to their construction of the statute; the Court held that its earlier, pre-amendment cases recognizing a not-absolute business-judgment-rule defense was *preserved* notwithstanding the amendments. *Loudermilk*, 761 S.E.2d 343-44.

This case presents a markedly similar pattern whereby: (i) the New York Court of Appeals' earlier decision in *Levin* construing "marital status" was, according to Plaintiff, abrogated by the passage of the Act; (ii) an intermediate decision (*Morse*) has interpreted the amended statute as entirely displacing the holding in *Levin*; and (iii) the New York Court of Appeals now may benefit from the opportunity to address the application of "marital status" after the Restoration Act. Interlocutory appeal from this Court is an appropriate vehicle for that review.

**B.    The Meaning of Marital Status Discrimination Under the NYCHRL Is a Significant Public Policy Concern for the City and Its Millions of Employees.**

"We have said that sufficiently important state issues 'require value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make.'" *Chauca*, 841 F.3d at 94 (quoting *Licci*, 673 F.3d at 74). Several features of this case weigh on important matters of public policy.

*First*, both the Second Circuit and the New York Court of Appeals have viewed the construction of the NYCHRL's liberal-construction provision as "sufficiently important" to merit certification. *Id.* As noted in Part I.B.2 above, the Second Circuit has sought certification in three such cases following the passage of the Restoration Act, and the New York Court of Appeals granted certification in each case. *Makinen*, 86 N.E.3d 514; *Chauca*, 89 N.E.3d 475; *Syeed v. Bloomberg L.P.*, 203 N.E.3d 630 (N.Y. 2023). In addition, the New York Court of Appeals decided

a fourth case on appeal from the state courts. *Doe*, 167 N.E.3d 454 (N.Y. 2021). This is not surprising, given the NYCHRL's critical role in governing the working lives of millions of employees. Likewise, employers responsible for setting a vast range of policies in the workplace – have an important reliance interest in ensuring that their practices comport with the law. Thus, both groups would benefit from a binding ruling that states whether *Morse*'s application of the liberal-construction provision was erroneous.[4] And as emphasized in *Chauca*, the existence of conflicting decisions among federal courts regarding the correct interpretation of at issue "[f]urther illustrate[s] our belief that proper resolution of this issue is broader than the resolution of the case at bar," signaling the public importance of such matters of construction. *Chauca*, 841 F.3d at 94.

*Second*, multiple levels of state and City government have demonstrated a strong interest in the construction of "marital status" under the NYCHRL. The New York Court of Appeals, of course, has an interest in ensuring consistent interpretation of "marital status" post-amendment of the Restoration Act. In addition to those courts, the issue has been addressed by: (i) the City Council, via the introduction of the proposed 2003 and 2004 amendments (which would have expanded the "marital status" definition, but were not adopted) and the Restoration Act; (ii) the Bloomberg administration, in opposing the proposed 2003 and 2004 amendments to the NYCHRL; and (iii) the City officials who testified in the 2003/2004 hearings as to the proposed amendments.[5]

---

[4] In another case involving a disputed construction of the New York Labor Law, the fact that the construction impacted the rights of a large segment of employees – healthcare workers – also favored certification. "[L]aws applicable to health care workers, however defined, are of great importance to the public policy of New York, and the question how to interpret essential procedural and substantive provisions of [the statute] is likely to recur." *Reddington*, 511 F.3d at 136 (footnote omitted) (emphasizing that the state health care sector "employed more than 1,000,000" (*id.* at 136 n.1); certifying for decision by the Court of Appeal the construction of a statutory waiver provision affecting employment claims in healthcare sector).

[5] *See* Defs.' Mot. to Dismiss Mem. at 6-10, ECF No. 32.

In this respect, this case is analogous to *Golden Flower Smoke Shop, Inc.*, which certified a question of state statutory interpretation to the New York Court of Appeals, observing:

> [T]he question [presented] is one that has been addressed by the New York State courts, the New York Legislature, the Department of Taxation and Finance, and even New York's Governor, all with varying outcomes. We recognize that the New York Court of Appeals is in a far better position to interpret [that question].

*City of New York v. Golden Feather Smoke Shop, Inc.*, 597 F.3d 115, 127 (2d Cir. 2010).

*Third*, Plaintiff's and *Morse*'s construction of marital status also necessarily results in ***lesser protection*** for partnership status than marital status under the NYCHRL's express language, a construction at odds with the NYCHRL's remedial purpose, and which the New York Court of Appeals may also view as being particularly significant. Whereas "marital status" is not defined in the NYCHRL, the Restoration Act added an express definition of "partnership status": "The term "partnership status" means "the status of being in a domestic partnership, as defined by subdivision a of section 3-240." N.Y.C. Admin. Code § 8-102. The partnership-status definition includes no protection for one's status "in relation to another person," such that reading that language into the marital-status definition would render protection against marital-status discrimination broader than protection against partnership-status discrimination. The New York Court of Appeals may conclude that such discrimination, which the Council sought to prohibit by adding partnership-status protection in the first place, should be avoided. Under applicable canons of statutory construction, "[i]t will be presumed that the Legislature did not intend that a statute would have an unjust effect . . . . and, if a statute apparently has such effect, some other construction is to be sought if possible." N.Y. Stat. Law § 146 (McKinney) (Editor's Notes) (footnote and citations omitted). Indeed, "[a] construction of a statute is favored which makes it operate equally on all classes of persons and ***avoids unjust discrimination***." N.Y. Stat. Law § 147 (McKinney)

19

(Editor's Notes) (citations omitted and emphasis added).[6]  This problem provides a further ground

for a reviewing court to decline to follow *Morse*.

   In short, all factors recognized for certifying a legal question to the New York Court of

Appeals amply justify that solution to the question presented by Plaintiff's sole claim in this case.[7]

### III.    This Lawsuit Should be Stayed Pending the Resolution of Defendants' Appeal.

   In addition to granting Defendants' motion for certification, Defendants respectfully

request this Court to stay proceedings pending the Second Circuit's disposition of Defendants'

petition for permission to appeal, or if the petition is granted, of the appeal itself. In deciding

whether to order a stay pending appeal, the Court should consider the following four factors: (1)

whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

(2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay

will substantially injure the other parties interested in the proceeding; and (4) the public interest.

*In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007) (quoting *Hilton v.*

*Braunskill*, 481 U.S. 770, 776 (1987)). "The degree to which a factor must be present varies with

---

[6] A definition of marital status that affords lesser status to domestic partnerships compared to
traditional marriage also would raise serious concerns under federal anti-discrimination law.  *See*
*generally, Romer v. Evans*, 517 U.S. 620 (1996) (striking down state constitutional provision that
restricted protections for gay residents); *Mass. v. U.S. Dep't of Health & Human Servs.*, 682 F.3d
1, 11 (1st Cir. 2012) (*Romer* defended "the chance to secure equal protection of the laws on the
same terms as other groups."); *accord Perry v. Brown*, 671 F.3d 1052, 1076 (9th Cir. 2012).
[7] Finally, Plaintiff has publicized this Court's Order in statements to the press.  *See* Jessica Finn,
*SO 'HAPPY' Wendy Williams' ex Kevin Hunter wins a major court victory in $10m lawsuit*
*against daytime talk show's production company*, The U.S. Sun (Sept. 9, 2023, 12:03 ET),
https://www.the-sun.com/entertainment/9035540/wendy-williams-ex-kevin-hunter-lawsuit-win-
production-company/.  His statements amplify the perception that New York City law extends
anti-discrimination protection to employees based on the identity of their particular spouses or
ex-spouses.  To the extent the issue is, to date, substantially unresolved under New York or
Second Circuit precedent, Plaintiff's public statements sow public confusion, undermining
faithful compliance with the statute's marital-status protection.

the strength of the other factors, meaning that 'more of one [factor] excuses less of the other.'" *Id.* (citation omitted). Here, all of these factors favor a stay pending appeal.

*First*, Defendants have shown a sufficient probability of success on the merits. Although "[t]he Supreme Court has indicated that 'more than a mere "possibility" of relief is required[,] . . . the moving party need not demonstrate that it is more likely than not to succeed on the merits of its appeal" in order for this factor to weigh in favor of stay. *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, No. 09-CV-3312, 2010 WL 5437208, at *7 (E.D.N.Y. Dec. 17, 2010) (first quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009); then quoting *Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 37 (2d. Cir. 2010)). Here, at the very least, footnote five of this Court's Order details several points and authorities that would support a ruling that *Morse* erroneously construes the marital-status definition. Order at 27-28 n.5, ECF No. 40. As discussed above in Part I.B, the flaws in *Morse*'s reasoning establish at least a substantial ground for a difference of opinion on the question presented in *Morse* and this case. When that element is met, courts have determined that an appellant likewise has established a *probability of success* on the merits, warranting a stay or relief from judgment. *See, e.g.*, *Bluetooth SIG, Inc. v. FCA US LLC*, Case No. 2:18-cv-01493-TL, 2022 WL 789480, at *1-2 (W.D. Wash. Feb. 24, 2022) (where court had certified for interlocutory appeal the denial of defendants' summary-judgment motion based on finding that "'fair-minded jurists might reach contradictory conclusions,'" the factor of "likelihood of success on appeal" favored entering stay); *Trendsettah USA, Inc. v. Swisher Int'l Inc.*, Case No. SACV 14-1664, 2020 WL 11232926, at *3 (C.D. Cal. Dec. 2, 2020) (where the court "grant[ed] relief for interlocutory appeal because the Ninth Circuit might find differently from this Court," the appellant had established "'a reasonable probability' or 'fair prospect of

success,' which is sufficient to satisfy this factor"; granting relief from judgment pending appeal (citation omitted)).

*Second*, in the absence of a stay, Defendants face multiple forms of irreparable harm. As an initial matter, in the absence of a stay, this case may proceed to trial while the appeal is still pending. Although the mere expenditure of resources in discovery is generally found not to constitute irreparable harm, such harm *is* found "if trial were to proceed." *Ferring B.V. v. Allergan, Inc.*, 343 F. Supp. 3d 284, 291 (S.D.N.Y. 2018). "Continuation of trial at this stage, with a case-dispositive issue pending on appeal, would drain ***parties' resources and the Court's***. If on appeal the [reviewing] Circuit reverses this Court's [order], trial will have been a nullity, irreparably harming both parties." *Id.* (emphasis added). This consideration is additionally meaningful here, where Plaintiff has sued not only his former employer, but two individuals. Not only are those individual defendants at risk of suffering an adverse judgment on a highly-suspect claim in which the Plaintiff is seeking $7 million, but a negative outcome also could harm their personal reputations, particularly given Plaintiff's tendency to publicize these proceedings with the press (*see supra note* 7) – an unjust ordeal if *Morse* was wrongly decided. In the analysis of irreparable harm for the purpose of entering a preliminary injunction, for example, courts observe that "[l]oss of intangible assets such as reputation and goodwill can constitute irreparable injury." *Medicine Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (citation omitted); *see, e.g.*, *Regeneron Pharm., Inc. v. U.S. Dep't of Health & Hum. Servs.*, 510 F. Supp. 3d 29, 39-40 (S.D.N.Y. 2020) ("court can find irreparable harm based on 'loss of reputation, good will, and business opportunities' . . . because these damages 'are difficult to establish and measure.'") (quoting *Reigster.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)).

Defendants also face challenges as to the potential waiver of their attorney-client privilege if this matter proceeds. As Plaintiff alleges, the Defendants initiated an internal investigation into Plaintiff's workplace conduct on *The Wendy Williams Show*. Compl. ¶ 54, ECF No. 1. As the Court is undoubtedly aware, there are circumstances in which an employer may be faced with the difficult decision as to whether to waive the privilege vis-à-vis such an investigation in defending litigation. Such a risk of unnecessary waiver of attorney-client privilege has been found to establish irreparable harm, warranting entry of a stay. *See In re Actos Antitrust Litig.*, Master File No. 1:13-cv-09244, 2020 WL 8996696, at *2 (S.D.N.Y. Mar. 9, 2020) (Defendant's potential advice of counsel defense, which would require wavier of attorney-client privilege, established a finding of irreparable harm, "given the 'overriding importance of the attorney-client privilege to our system of jurisprudence.'" (citation omitted)). In all, the factor of irreparable harm to Defendants militates in favor of a stay.

*Third*, a stay would not cause Plaintiff to suffer substantial injury. Significantly, Plaintiff waited almost three years to commence the instant matter, which he appears to have filed shortly before the three-year statute-of-limitations period would have lapsed. *See* Compl. ¶ 34, ECF No. 1 (alleged April 18, 2019 date of termination). Given Plaintiff's voluntary delay, "[a] comparatively brief delay to resolve this potentially dispositive issue of law cannot be said to cause [him] substantial injury." *Scallon v. Scott Henry's Winery Corp.*, Case No. 6:14-cv-1990, 2015 WL 5772107, at *2 (D. Or. Sept. 30, 2015) (staying action pending appeal of pleading motion). Moreover, Plaintiff faces no prospect of continuing harm, given that he is no longer employed by Defendants and, indeed, *The Wendy Williams Show* is no longer airing or in production. *See* Compl. ¶¶ 39-40, ECF No. 1. Rather, the remedy at issue is monetary: where Plaintiff "'is seeking past wages for a discrete time period and is not suffering continuing harm,'" this indicates that

"'Plaintiff will not be substantially injured by a stay.'" *In re Actos Antitrust Litig.*, 2020 WL 8996696, at *2 (quoting *Kinkead v. Humana, Inc.*, No. 3:15-cv-1637, 2016 WL 9453808, at *3 (D. Conn. Oct. 13, 2016)). *See also Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110, 1113 (9th Cir. 2005) (holding that delay in monetary recovering did not outweigh other factors supporting a stay). In any event, if the Court grants a stay, but then Second Circuit declines to accept this matter for appeal, the impact on Plaintiff would truly be negligible at best. *Accord Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, No. CV 13-5693, 2015 WL 4397175, at *4 (C.D. Cal. June 8, 2015) ("If the Ninth Circuit does not accept Sirius XM's petition, the delay will be negligible and the effect on the public slight.").

Fourth, the public interest weighs in favor of efficiently allocating judicial resources by awaiting further proceedings until the Second Circuit has resolved the central legal question in this case. "[C]onsiderations of judicial economy counsel, as a general matter, against investment of court resources in proceedings that may prove to have been unnecessary." *Sutherland v. Ernst & Young LLP*, 856 F. Supp. 2d 638, 644 (S.D.N.Y. 2012). This factor applies with particular force in this case, where Defendants' appeal has the potential to resolve the matter entirely prior to discovery. *See Hymes v. Bank of Am., N.A.*, Nos. 18-CV-2352, 18-CV-4157, 2020 WL 9174972, at *7 (E.D.N.Y. Sept. 29, 2020) ("Since Defendant's appeal has the potential to resolve this case without the need for further discovery, the Court finds that it is in the public interest and the interests of all parties to stay discovery and all further proceedings before this Court.").

A stay in this matter also would benefit not only the parties but the broader public as a whole. The New York federal and state courts have grappled with an influx of employment discrimination claims under the NYCHRL since the amendments of the Restoration Act, prompting the New York Court of Appeals to accept multiple certified questions of construction

from the Second Circuit. *See* Part II.B. above. As to the federal courts in particular, which would have fewer cases on its docket if *Morse* is disregarded, "this is a question of considerable importance," given that "employment discrimination cases are a substantial portion of the caseload for the District Courts of this Circuit." *Zakrzewska v. New School*, 574 F.3d 24, 28 (2d Cir. 2009), *certified questions answered by* 928 N.E.2d 1035 (N.Y. 2010).

Finally, all of New York City's employers who rely on the law in order to set their policies, the millions of employees who work in accord with those policies and the law's dictates, and the policymakers who have invested substantial time and effort in crafting its scope and function, would benefit from an immediate appeal that would resolve an important dispute concerning the NYCHRL's sweep – both as to the meaning of "marital status" discrimination in particular and the law's liberal construction provision in general. Reducing the potential for parallel or potentially conflicting proceedings on matters of construing the NYCHRL would benefit all those affected, further cautioning in favor of staying this action.

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court certify this matter for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and to stay this action while the appeal is pending, together with such other and further relief as this Court deems just and proper.

Dated: September 26, 2023     Respectfully submitted,

             */s/ Nicholas L. Collins*

             Nicholas L. Collins
             Darrell S. Gay
             **ARENTFOX SCHIFF LLP**
             1301 Avenue of the Americas, Fl. 42
             New York, N.Y. 10019-6040
             Tel.: (212) 484-3900
             Fax: (212) 484-3990
             Nicholas.Collins@afslaw.com
             Darrell.Gay@afslaw.com

_____

*Attorneys for Ira Bernstein, Mort Marcus,*
*and Debmar-Mercury*

## **CERTIFICATE OF SERVICE**

I, the undersigned counsel, hereby certify that on September 26, 2023, I served this on

counsel of record via email at [abegeorgenyc@gmail.com](mailto:abegeorgenyc@gmail.com).

*/s/ Nicholas L. Collins*
Nicholas L. Collins