UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KELVIN HUNTER,

               Plaintiff,

- against -

DEBMAR-MERCURY LLC, IRA
BERNSTEIN, MORT MARCUS, and
JOHN and JANE DOE 1-5 (Employees of
Defendant DEBMAR-MERCURY LLC,
and/or corporations/subsidiaries of
DEBMAR-MERCURY LLC not yet
known),

               Defendants.

---

**ORDER**

22 Civ. 1687 (PGG)

---

PAUL G. GARDEPHE, U.S.D.J.:

On September 1, 2023, this Court issued a Memorandum Opinion & Order

denying Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss.  Hunter v. Debmar-Mercury

LLC, No. 22 Civ. 1687 (PGG), 2023 WL 5671527 (S.D.N.Y. Sept. 1, 2023).  Defendants now

move for certification of the Memorandum Opinion & Order for interlocutory appeal pursuant to

28 U.S.C. § 1292(b) and for a stay of the proceedings pending the outcome of the appeal.  (Dkt.

No. 47)  Plaintiff Kelvin Hunter opposes both motions.  (Dkt. No. 49)  For the reasons stated

below, Defendants' motion for certification and application for a stay will be granted.

**BACKGROUND[1]**

Plaintiff Hunter was the executive producer of The Wendy Williams Show, a

daytime television program, from the show's inception in 2008 until his termination in April

---

[1]  A more detailed account of the facts and procedural history of this case can be found in the
Court's Memorandum Opinion & Order.  (Hunter, 2023 WL 5671527, at *1-3)

2019.  (Hunter, 2023 WL 5671527, at *1)  Plaintiff is also the ex-husband of the show's host,

Wendy Williams.  (Id.)  Plaintiff alleges that on April 11, 2019, he was served with notice that

his then-wife, Wendy Williams, had filed for divorce.  (Id. (quoting Cmplt. (Dkt. No. 1) ¶ 33))

On April 18, 2019, Defendant Bernstein – co-president of Debmar-Mercury, the company that

produces The Wendy Williams Show – notified Plaintiff that his employment was terminated.

(Id. at *1-2)

The Complaint was filed on March 1, 2022, and asserts a claim for unlawful

termination under the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §

8-107(1)(a).  (Cmplt. (Dkt. No. 1) ¶¶ 48-60).  Plaintiff contends that he "was terminated solely

because of his marital status [vis-à-vis] the Show's host," and that this "conduct . . . constitutes a

clear violation of Hunter's statutory rights [under the NYCHRL] to be free of employment

discrimination on the basis of marital status."  (Id. ¶¶ 53, 59)

Defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure on September 7, 2022.  (Dkt. No. 31)  In their motion, Defendants contend that

the NYCHRL's prohibition against marital status discrimination "does not cover a person's

marriage to a particular individual."  (Def. MTD Br. (Dkt. No. 32) at 1)  Plaintiff filed his

opposition on October 7, 2022.  (Dkt. No. 35)

On September 1, 2023, this Court issued a Memorandum Opinion & Order

denying Defendants' motion to dismiss.  (Hunter, 2023 WL 5671527)  In the opinion, this Court

explains that whether Plaintiff states a claim depends on the interpretation of "marital status" as

used in the NYCHRL § 8-107(1)(a).  (Id. at *4)  If the NYCHRL's prohibition against marital

status discrimination extends only to claims based on the fact that a person is married or

unmarried, Plaintiff has not stated a claim.  If the statute extends to claims based on a plaintiff's

marriage to a particular person – here, Plaintiff's marital status vis-à-vis Wendy Williams – then Plaintiff has stated a claim.  (Id.)

With respect to this issue of statutory interpretation, this Court concluded that, pursuant to Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) and its progeny, it was "constrained to follow" a decision of the First Department in Morse v. Fidessa Corp., 165 A.D.3d 61 (1st Dep't 2018).  (Id. at *15)  In Morse, the First Department ruled that, under the NYCHRL, ""'[m]arital status" may refer to . . . whether two individuals are married to each other or not married to each other.'"  (Id. (quoting Morse, 165 A.D.3d at 68))  Because Defendants had not offered "persuasive evidence" that the New York Court of Appeals would overrule Morse, this Court is bound by that decision.  (Id.)

The Court expressed doubt that Morse was correctly decided, however:

> This Court's conclusion that Defendants have not satisfied the "persuasive evidence" standard does not mean that this Court agrees with Morse's interpretation of "marital status" as used in the NYCHRL.  Indeed, Morse's definition of "marital status" is not supported by (1) the ordinary meaning of that term; (2) the NYCHRL's legislative purpose; (3) the Restoration Act's treatment of Levin [v. Yeshiva Univ., 96 N.Y.2d 484, 730 N.Y.S.2d 15, 754 N.E.2d 1099 (2001)]; or (4) the broader legislative history of the Restoration Act.

(Id. at 15 n.5)  While this Court disagreed with the First Department's analysis in Morse, it ultimately determined that "Morse cannot be disregarded . . . simply because of a concern about its reasoning."  (Id.)

On November 17, 2023, Defendants filed the instant motion seeking certification of the Memorandum Opinion & Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Defendants also seek a stay pending resolution of the appeal.  (Dkt. No. 47)  Plaintiff opposes both requests.  (Pltf. Opp. (Dkt. No. 49) at 1)

**DISCUSSION**

I.    **CERTIFICATION OF INTERLOCUTORY APPEALS**

    A.    **Legal Standard**

        28 U.S.C. § 1292(b) authorizes a district court to certify an order for interlocutory appeal where the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and . . . an immediate appeal from the order may materially advance the ultimate termination of the litigation." "The moving party has the burden of establishing all three elements." Segedie v. The Hain Celestial Grp., Inc., No. L 4-CV-5029 NSR, 2015 WL 5916002, at *1 (S.D.N.Y. Oct. 7, 2015). "Even when the statutory criteria are met, [however,] '[d]istrict court judges have broad discretion to deny certification.'" Id. (quoting Century Pac., Inc. v. Hilton Hotels Corp., 574 F. Supp. 2d 369, 370 (S.D.N.Y. 2008)).

        Certification for interlocutory appeal should be "strictly limited," because only "'exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (brackets in original) (quoting Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir.1990)). But "[w]hen a ruling satisfies [the § 1292(b)] criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013) (quoting Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 111 (2009)).

II.   **ANALYSIS OF STATUTORY FACTORS**

    A.    **Controlling Question of Law**

        As to the first statutory factor, "a question of law is 'controlling' if reversal of the district court's order would terminate the action." Klinghoffer, 921 F.2d at 25. "A question of law can also be controlling if reversal of the district court's order 'could significantly affect the

4

conduct of the action' or if 'the certified issue has precedential value for a large number of cases.'" Tantaros v. Fox News Network, LLC., 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (quoting Glatt v. Fox Searchlight Pictures Inc., No. 11-CV-6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)). The question of law "must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." Capitol Recs., LLC v. Vimeo, LLC, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (quotation marks omitted).

As discussed above, Defendants' motion to dismiss turns on "the definition of 'marital status' in the NYCHRL [and whether that term] includes an employee's marital status in relation to another person." Hunter, 2023 WL 5671527, at *4. Plaintiff agrees that "the definition of 'marital status' under the NYCHRL is a pure question of statutory interpretation and that a reversal of this Court's opinion would result in dismissal of the action." (Pltf. Opp. (Dkt. No. 49) at 4). Accordingly, the first statutory element is satisfied.

### B.      Substantial Ground for Difference of Opinion

There is "substantial ground for difference of opinion" under Section 1292(b) where "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." In re Enron Corp., No. 01-16034, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007) (quotation marks omitted). It is not sufficient to show "the mere presence of a disputed issue that is a question of first impression," Flor, 79 F.3d at 284, nor is it enough to show the "possibility of a different outcome on appeal." Segedie, 2015 WL 5916002, at *3. Instead, there must be "substantial doubt that the district court's order was correct." SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06-CV-15375KMK, 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007) (quotation marks omitted). Ultimately, "[i]t is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged

ruling when deciding whether the issue for appeal is truly one on which there is a substantial

ground for dispute." Flor, 79 F.3d at 284 (quotation marks and citation omitted).

Defendants argue that there is "substantial ground for difference of opinion" as to

whether "marital status" – as used in the NYCHRL § 8-107 – includes an employee's marital

status in relation to another person. (Def. Br. (Dkt. No. 48) at 6-7)

In the September 1, 2023 Memorandum Opinion & Order, this Court discussed at

length why it disagrees with Morse's conclusion that "marital status" includes an employee's

marital status vis a vis a particular person:

> This Court's conclusion that Defendants have not satisfied the "persuasive
> evidence" standard does not mean that this Court agrees with Morse's
> interpretation of "marital status" as used in the NYCHRL. Indeed, Morse's
> definition of "marital status" is not supported by (1) the ordinary meaning of that
> term; (2) the NYCHRL's legislative purpose; (3) the Restoration Act's treatment
> of Levin [v. Yeshiva Univ., 96 N.Y.2d 484, 730 N.Y.S.2d 15, 754 N.E.2d 1099
> (2001)]; or (4) the broader legislative history of the Restoration Act.
>
> As to the ordinary meaning of "marital status," Black's Law Dictionary – which
> the New York Court of Appeals has recently cited in a NYCHRL case, see
> Bloomberg, 36 N.Y.3d at 360, 165 N.E.3d 180 – defines that term as "[t]he
> condition of being single, married, legally separated, divorced, or widowed."
> Marital Status, Black's Law Dictionary (11th ed. 2019). This meaning accords
> with the use of the term in everyday speech. See Manhattan Pizza Hut, 51 N.Y.2d
> at 511-12, 434 N.Y.S.2d 961, 415 N.E.2d 950 ("when one is queried about one's
> 'marital status,' the usual and complete answer would be expected to be a choice
> among 'married,' 'single,' etc., but would not be expected to include an
> identification of one's present or former spouse . . . .").
>
> As to the NYCHRL's legislative purpose, the opening provision of that statute
> states that "there is no greater danger to the health, morals, safety and welfare of
> the [City of New York] and its inhabitants than the existence of groups prejudiced
> against one another and antagonistic to each other because of their actual or
> perceived differences, including those based on . . . marital status [or] partnership
> status." N.Y.C. Admin. Code § 8-101. The NYCHRL – like other anti-
> discrimination laws – is thus focused on discriminatory animus directed at
> particular groups or classes of people. See Discrimination, Black's Law
> Dictionary (11th ed. 2019) (defining "discrimination" as "[t]he effect of a law or
> established practice that confers privileges on a certain class or that denies
> privileges to a certain class").

As to the Restoration Act's treatment of Levin, Morse misconstrues which portions of Levin were abrogated by the Restoration Act and why. In Levin, plaintiffs were unmarried lesbians. Plaintiffs and their partners had been denied medical student housing at Yeshiva University's Albert Einstein College of Medicine. The university restricted housing to married couples and their children. Levin, 96 N. Y.2d at 489-90, 730 N.Y.S.2d 15, 754 N.E.2d 1099. Plaintiffs sued the university for marital status discrimination in violation of, inter alia, the NYCHRL. The New York Court of Appeals rejected the claim, finding that the university's "policy did not discriminate on the basis of marital status on its face . . . , but instead validly limited occupancy to only those in a legal, family relationship with [a medical student]." Id. at 490-91, 730 N.Y.S.2d 15, 754 N.E.2d 1099.

In sum, the plaintiffs in Levin – unlike the plaintiffs here and in Morse – did not claim that they were subject to discrimination because of the identity of their partner or spouse. Instead, plaintiffs complained that the university had denied them housing pursuant to a policy excluding unmarried couples, and it was this policy that the Levin plaintiffs argued violated their right to be free from marital status discrimination. And that is the argument the Levin court rejected in stating that "a distinction must be made between the complainant's marital status as such, and the existence of the complainant's disqualifying relationship – or absence thereof – with another person." Id. at 490, 730 N.Y.S.2d 15, 754 N.E.2d 1099. Levin says nothing about discrimination premised on the individual to whom someone is or is not married.

The Restoration Act abrogates Levin to the extent that it adds "partnership status" as a protected status under the NYCHRL, and to the extent that the Act's liberal construction provision is inconsistent with Levin's reasoning. But Morse errs in concluding that the City Council's abrogation of Levin implies an intent to create a cause of action for marital status discrimination based on the identity of the complainant's spouse. As discussed above, the identity of the spouse or partner was irrelevant in Levin; the case turned on the fact that the Levin plaintiffs were not married.

Finally, as to the Restoration Act's broader legislative history, Defendants accurately point out that (1) two prior drafts of the Restoration Act contained language defining "marital status" to include "the marital status of a person in relation to another person" (N.Y. City Council, Comm. on Gen. Welfare, Int. No. 439 (Apr. 30, 2003)), and Int. No. 22 (Sept. 22, 2004); and (2) that language does not appear in the legislation as enacted. While this Court has concluded that this argument does not amount to "persuasive evidence" that the New York Court of Appeals would overturn Morse, Defendants' argument is not without force.

(Hunter, 2023 WL 5671527, at *15 n.5)

Defendants repeat these arguments in their briefing, and note that the issue presented is one "of first impression for the Second Circuit and the New York Court of Appeals." (Def. Br. (Dkt. No. 48) at 6-10).

Citing Hermès Int'l v. Rothschild, 590 F. Supp. 3d 647 (S.D.N.Y. 2022), however, Plaintiff counters that Defendants have not shown the existence of "significant disagreement between courts," specifically, as to the interpretation of "marital status" in the NYCHRL. (Pltf. Opp. (Dkt. No. 49) at 5 (emphasis in Pltf. Opp.) (quoting Hermès, 590 F. Supp. 3d at 654) Plaintiff points out that Defendants have cited only two cases that run contrary to Morse – Christoforou v. Cadman Plaza North, Inc., No. 04 CV 08403(KMW), 2009 WL 723003 (S.D.N.Y. Mar. 19, 2009), and Gokhberg v. PNC Bank, N.A., No. 17-cv-00276, 2021 WL 421993 (E.D.N.Y. Jan. 6, 2021) – and that both cases rely on Levin, do not cite Morse, and do not address – as Morse does – the impact of the 2016 Restoration Act on the NYCHRL. (Id. at 5-6) Given these circumstances, Plaintiff argues that these cases constitute a weak basis on which to find "significant disagreement between courts" about the proper interpretation of "marital status" under the NYCHRL. (Id.)

Section 1292(b) does not require a "significant disagreement between courts" as a prerequisite for certification, however. See 28 U.S.C. § 1292(b) (permitting interlocutory appeal where "there is substantial ground for difference of opinion"). And courts in this District have held that this element is satisfied when there is either "'conflicting authority on the issue'" or when "'the issue is particularly difficult and of first impression for the Second Circuit.'" Enron, 2007 WL 2780394, at *1 (quoting In re Lloyd's Am. Tr. Fund Litig., No. 96 CIV. 1262 (RWS), 1997 WL 458739, at *5 (S.D.N.Y. Aug. 12, 1997)); see Tantaros, 465 F. Supp. 3d at 392 & n.6 (S.D.N.Y. 2020) (granting certification where issue was a "matter of first impression in this

Circuit," involved a "complex . . . interpretation of a novel issue of state law" that was "subject to legitimate dispute," and had not been addressed by any federal decision).

Here, for the reasons explained in the September 1, 2023 Memorandum Opinion & Order, there is "substantial ground for difference of opinion"; there is conflicting case law; and the issue is one of first impression in the Second Circuit and in the New York Court of Appeals.  Accordingly, the second statutory element is satisfied.

C.      **Whether Appeal Would Advance the Ultimate Termination of the Litigation**

Under the third prong of Section 1296(b), a court granting certification must find that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  This factor is "closely connected to the question of whether the appeal involves a controlling question of law," In re 650 Fifth Ave., No. 1:08-CV-10934-RJH, 2012 WL 363118, at *2 (S.D.N.Y. Feb. 2, 2012), and is one on which courts place "particular weight." Transp. Workers Union of Am., Loc. 100, AFL-CIO v. New York City Transit Auth., 358 F. Supp. 2d 347, 350 (S.D.N.Y. 2005).  "[I]n evaluating this factor, courts must consider the institutional efficiency of both the district court and the appellate court." Tocco v. Real Time Resols., Inc., No. 14CV810, 2015 WL 5086390, at *2 (S.D.N.Y. Mar. 4, 2015).

Reversal of this Court's Memorandum Opinion & Order would end this case in its entirety and would thus "advance the ultimate termination of the litigation." See Tantaros, 465 F. Supp. 3d at 392 (granting certification under Section 1292(b) where reversal of the court's order "would end [the] case" by depriving the court of subject matter jurisdiction); Montefiore Med. Ctr. v. Teamsters Loc. 272, No. 09 CIV. 3096 (HB), 2009 WL 3787209, at *6-7 (S.D.N.Y. Nov. 12, 2009), aff'd, 642 F.3d 321 (2d Cir. 2011) (granting certification where "the governing issue is subject matter jurisdiction and to proceed may result in a decision that the Court lacked subject matter jurisdiction").

9

Citing <u>Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.</u>, No. 19 CIV. 10067 (PAE), 2023 WL 4249356 (S.D.N.Y. June 29, 2023), and <u>In re S. Afr. Apartheid Litig.</u>, 624 F. Supp. 2d 336 (S.D.N.Y. 2009), however, Plaintiff argues that certification is inappropriate where a case is "at an early stage of discovery" and when "interlocutory appeal would 'materially delay' the progress of the litigation." (Pltf. Opp. (Dkt. No. 49) at 13)

<u>Altimeo</u> and <u>In re S. Afr. Apartheid Litig.</u> involve very different circumstances than those present here, however. In <u>Altimeo</u>, plaintiffs moved for certification of an order that dismissed the claims of "tenderer shareholders" but upheld the claims of "seller shareholders." <u>Altimeo</u>, 2023 WL 4249356 at *1. The court found that the interlocutory appeal plaintiffs sought "would materially delay the forward progress of the claims of the seller shareholders, as it does not make good sense to commence discovery as to such plaintiffs while the tenderer shareholders' appeal pends." <u>Id</u>. at 19. Here, by contrast, there is one plaintiff and a single cause of action. (Cmplt. (Dkt. No. 1)) There is therefore no risk of unduly delaying discovery as to certain claims while an appeal is pending concerning other claims.

<u>In re South African Apartheid Litigation</u> involved actions that had been "pending for seven years without any discovery." Moreover, "most of the conduct at issue . . . occurred over 20 years [earlier]," raising serious concerns regarding fading memories and loss of evidence. <u>In re S. Afr. Apartheid Litig.</u>, 624 F. Supp. 2d at 342. Here, the Complaint was filed in 2022, and much of the underlying conduct took place in 2019. (Cmplt. (Dkt. No. 1) ¶¶ 32-34)

The Court concludes that the third statutory element is satisfied.

\*       \*       \*       \*

Having considered the three statutory factors, this Court concludes that they favor certifying an interlocutory appeal.

10

### III.   WHETHER THE INTERPRETATION OF "MARITAL STATUS" UNDER THE NYCHRL CONSTITUTES AN APPROPRIATE ISSUE FOR A CERTIFIED QUESTION TO THE NEW YORK COURT OF APPEALS

Defendants argue that an interlocutory appeal would be appropriate here so that the Second Circuit could certify to the New York Court of Appeals the question whether "marital status" – as used in the NYCHRL – extends to an employee's marital status in relation to another person. (Def. Br. (Dkt. No. 48) at 14)  Plaintiff contends that this issue is not appropriate for purposes of a certified question to the New York Court of Appeals, and that accordingly any interlocutory appeal would be futile.  (Pltf. Opp. (Dkt. No. 49) at 13-16)

Under New York law, the Second Circuit may certify questions to the New York Court of Appeals where "determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the [New York] Court of Appeals exists."  22 N.Y.C.R.R. § 500.27(a).  In deciding whether to certify a question to the New York Court of Appeals, the Second Circuit considers:  "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation."  O'Mara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir. 2007).

As to the first factor, the parties agree that the New York Court of Appeals has not addressed whether "marital status" – as used in the NYCHRL – includes an employee's marital status vis-à-vis another person.  (Def. Br. (Dkt. No. 48) at 15; Pltf. Opp. (Dkt. No. 49) at 14)  While the First Department addressed this issue in Morse, the Second Circuit has previously certified questions to the New York Court of Appeals despite the existence of intermediate New York appellate court decisions addressing similar issues.  See City of New York v. Golden Feather Smoke Shop, Inc., 597 F.3d 115, 123-24, 126 (2d Cir. 2010) (certifying questions related to the taxation of cigarettes on Indian reservations despite the existence of two non-conflicting

Fourth Department decisions addressing similar issues); see also Zakrzewska v. New School, 574 F.3d 24, 28 & n.4 (2d Cir. 2009)  (certifying question related to the availability of an affirmative defense under the NYCHRL where a First Department decision "suggested that the . . . defense is not available").  In sum, the absence of an authoritative state court decision suggests that a certified question to the New York Court of Appeals would be appropriate.

As to the second factor, the parties acknowledge that the NYCHRL governs the rights of millions of New York City employees.  (Pltf. Opp. (Dkt. No. 49) at 15; Def. Reply (Dkt. No. 50) at 8)  Resolution of the disputed issue here would determine the viability of a NYCHRL claim premised on an employee's "marital status" vis-à-vis another person.  The Second Circuit has on multiple occasions found that disputes about the scope of various provisions in the NYCHRL merit a certified question to the New York Court of Appeals. Makinen v. City of New York, 857 F.3d 491, 495-97 (2d Cir. 2017) (certifying question as to whether the NYCHRL "preclude[s] a plaintiff from bringing a disability discrimination claim based solely on a perception of untreated alcoholism" given, inter alia, the 2005 Restoration Act's liberal construction provision); Chauca v. Abraham, 841 F.3d 86, 94-95 (2d Cir. 2016) (certifying question as to the "standard for finding a defendant liable for punitive damages" under the NYCHRL in light of the 2005 and 2016 Restoration Acts); Syeed v. Bloomberg L.P., 58 F.4th 64, 71 (2d Cir. 2023) (certifying question as to "[w]hether a nonresident plaintiff not yet employed in New York City or State satisfies the impact requirement of the [NYCHRL] or the New York State Human Rights Law if the plaintiff pleads and later proves that an employer deprived the plaintiff of a New York City- or State-based job opportunity on discriminatory grounds").  The importance and nature of the disputed issue thus suggests that a certified question would be appropriate.

12

As to the third factor – "the capacity of certification to resolve the litigation" – Plaintiff does not dispute that a certified question to the New York Court of Appeals could resolve the parties' dispute. (Pltf. Opp. (Dkt. No. 49) at 14-16)

This Court concludes that the proper interpretation of "marital status" – as used in the NYCHRL – presents a sufficiently plausible candidate for a certified question that an interlocutory appeal cannot be deemed futile. Because the statutory factors discussed above favor certification of an interlocutory appeal, Defendants' motion for certification of an interlocutory appeal will be granted.

## IV.    APPLICATION FOR A STAY PENDING APPEAL

Defendants ask this Court to stay the proceedings pending the Second Circuit's resolution of the appeal. (Def. Br. (Dkt. No. 48) at 20) Plaintiff asks the Court to either deny the stay application outright or to "stay only the trial and not discovery." (Pltf. Opp. (Dkt. No. 49) at 18)

In deciding whether to stay a case pending an interlocutory appeal, courts consider "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." In re World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (footnote omitted) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)). "[T]he degree to which a factor must be present varies with the strength of the other factors, meaning that 'more of one [factor] excuses less of the other.'" Id. (quotation marks omitted; brackets in original) (quoting Thapa v. Gonzales, 460 F.3d 323, 334 (2d Cir. 2006)).

As to likelihood of success on the merits – for the reasons discussed above – this Court has concluded that (1) "marital status" as used in the NYCHRL does not encompasses an

13

employee's marital status in relation to another person; and (2) the meaning of this term under the NYCHRL presents a plausible candidate for a certified question.  This factor thus weighs in favor of a stay.

As to irreparable injury absent a stay, Defendants have made no such showing. Defendants acknowledge that "the mere expenditure of resources in discovery is generally found not to constitute irreparable harm." (Def. Br. (Dkt. No. 48) at 22); see Blanchard v. Tabulate, Inc., No. 18 CIV. 8631 (ER), 2018 WL 11383043, at *2 (S.D.N.Y. Oct. 22, 2018) ("'Mere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.'" (quoting Renegotiation Bd. v. Bannercraft Clothing Co., 415 U.S. 1, 24 (1974))  And while Defendants raise the specter of "reputation[al]" damage because of Plaintiff's occasional contact with the media regarding this case (see Def. Br. (Dkt. No. 48) at 22), Defendants' allegations of potential reputational harm are "remote [and] speculative." Tom Doherty Assocs., Inc. v. Saban Ent., Inc., 60 F.3d 27, 37 (2d Cir. 1995).

Defendants argue, however, that should discovery proceed, Debmar-Mercury could face "the difficult decision as to whether to waive the [attorney-client] privilege" with respect to "an internal investigation into Plaintiff's workplace conduct on The Wendy Williams Show." (Def. Br. (Dkt. No. 48) at 23)  But the decision whether to waive privilege is Debmar-Mercury's decision to make, and being forced to make that decision does not constitute irreparable harm.  In sum, Defendants have not demonstrated that they will suffer irreparable injury absent a stay.  This factor thus weighs against issuance of a stay.

As to whether issuance of a stay would substantially injure other parties interested in the proceeding, neither side has made a showing as to this factor.  Accordingly, this factor is neutral.

14

As to the public interest, there is – of course – a public interest in the efficient adjudication of this dispute.  Moreover, "it is in the public interest . . . to stay discovery and all further proceedings" where an appeal "has the potential to resolve [a] case without the need for further discovery." Hymes v. Bank of Am., N.A., No. 18CV2352RRMARL, 2020 WL 9174972, at *7 (E.D.N.Y. Sept. 29, 2020).  Here, the proposed appeal presents a potentially dispositive issue, the resolution of which could resolve the parties' dispute without the need for discovery or additional motion practice.  The fourth factor thus weighs in favor of a stay.

Having considered the relevant factors, this Court concludes that they weigh in favor of granting the application for a stay pending appeal.

## CONCLUSION

For the reasons stated above, Defendants' motion for a certificate of appealability pursuant to 28 U.S.C. § 1292(b) is granted.  (Dkt. No. 47)  This case will be stayed pending resolution of the appeal.

If no application is made to the United States Court of Appeals for the Second Circuit to accept the interlocutory appeal within ten days as set forth in Section 1292(b), or if the Second Circuit should deny any such application, the stay will be automatically lifted.

Dated: New York, New York
       January 5, 2024

                                   SO ORDERED.

                                   _____
                                   Paul G. Gardephe
                                   United States District Judge