UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KELVIN HUNTER,

Plaintiff,

-against-

DEBMAR-MERCURY LLC, IRA BERNSTEIN, MORT MARCUS, and JOHN and JANE DOE 1-5 (Employees of Defendant DEBMAR-MERCURY LLC, and/or corporations/subsidiaries of DEBMAR-MERCURY LLC not yet known),

Defendants.

**ORDER**

22 Civ. 1687 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

On March 1, 2022, Plaintiff Kelvin Hunter filed a Complaint against his former employer, Defendant Debmar-Mercury LLC; its principals, Defendants Ira Bernstein and Mort Marcus; and certain Doe individuals and entities. (Cmplt. (Dkt. No. 1) ¶ 1) The Complaint asserts that Defendants terminated Plaintiff's employment on the basis of his marital status in violation of the New York City Human Rights Law (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. (Id.) According to Plaintiff, Defendants terminated Plaintiff's employment as an executive producer of the Wendy Williams Show – a daytime television program – because of his impending divorce from Wendy Williams, the host of the program. (Id. ¶¶ 16, 18, 25-26, 33-36, 53)

On October 21, 2022, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 31) On September 1, 2023, this Court denied Defendants' motion to dismiss, finding that "Hunter ha[s] stated a claim for marital discrimination under the

NYCHRL." (Order (Dkt. No. 40) at 26-27)[1] On April 8, 2025, the Second Circuit vacated and remanded, ruling that the Complaint did not state a claim for marital discrimination under the NYCHRL because the New York Court of Appeals had – since this Court's ruling – held that "'marital status' [under the NYCHRL] refers to 'whether a person is participating in a marriage, not the nature of one's relationship with another specific person.'" (Summary Order (Dkt. No. 55) at 7 (citation omitted)) On June 10, 2025, this Court granted Defendants' motion to dismiss in accordance with the Second Circuit's April 8, 2025 order. (Dismissal & Scheduling Order (Dkt. No. 70) at 3)

On December 7, 2025, Plaintiff – now appearing pro se – moved for leave to file an amended complaint. (Dkt. No. 90) Plaintiff's proposed amended complaint asserts twenty new claims against Defendants, including breach of contract and unjust enrichment. (Id. at 15) Defendants oppose the motion. (Dkt. No. 97)

For the reasons stated below, Plaintiff's motion for leave to amend will be denied.

## BACKGROUND

### I. THE COMPLAINT AND THIS COURT'S SEPTEMBER 1, 2023 ORDER DENYING DEFENDANTS' MOTION TO DISMISS

The Complaint (Dkt. No. 1) was filed on March 1, 2022, and asserts a claim for "unlawful termination pursuant to NYCHRL § 8-107." (Id. at 8) As discussed above, the Complaint asserts that Defendants terminated Plaintiff's employment on the basis of his marital status in violation of the NYCHRL. (Id.) According to Plaintiff, Defendants terminated Plaintiff's employment as an executive producer of the Wendy Williams Show because of his

[1] The page numbers of documents referenced in this opinion correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

impending divorce from Wendy Williams, the host of the program. (Id. ¶¶ 16, 18, 25-26, 33-36, 53)

On October 21, 2022, Defendants moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (see Dkt. No. 31), arguing that their termination of Plaintiff's employment is not actionable under the NYCHRL, because the termination decision did not arise from any protected status Plaintiff enjoys under the NYCHRL. (Def. MTD Br. (Dkt. No. 32) at 5-6)

On September 1, 2023, this Court denied Defendants' motion to dismiss. (Dkt. No. 40) This Court's decision followed Morse v. Fidessa Corp., 165 A.D.3d 61 (1st Dept. 2018), in which the First Department held that "'[m]arital status' [under the NYCHRL] . . . may . . . refer to whether two individuals are married to each other or not married to each other.'" (Id. at 11 (quoting Morse, 165 A.D.3d at 68)) While this Court noted its disagreement with "Morse's interpretation of 'marital status' as used in the NYCHRL" (see id. at 27 n.5), the Court stated that was "constrained to follow Morse's ruling," because Defendants had not proffered "'persuasive evidence' that the New York Court of Appeals would reject the First Department's reasoning in Morse." (Id. at 26) Accordingly, "[g]iven Hunter's allegation that he was terminated because of his impending divorce from Wendy Williams – i.e., terminated because he would no longer be married to Williams" – this Court held that "Morse requires this Court to find that [Hunter] has stated a claim for marital status discrimination under the NYCHRL." (Id. at 26-27)

On November 17, 2023, Defendants moved for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and for a stay pending review and consideration of the appeal. (Dkt. No. 47) This Court granted Defendants' motion on January 5, 2024. (Dkt. No. 51) The sole issue on appeal was whether "marital status" under the NYCHRL encompasses an

employee's marital status in relation to a particular person. (See Summary Order (Dkt. No. 55) at 4)

## II. THE SECOND CIRCUIT'S APRIL 8, 2025 ORDER

In an April 8, 2025 order, the Second Circuit vacated this Court's decision denying Defendants' motion to dismiss. (Id.) The Second Circuit noted that – although this Court had been "skeptical of the Morse court's reasoning" in its decision denying Defendants' motion to dismiss – the Court "decided that it was compelled to follow Morse because it concluded that it lacked 'persuasive evidence' that the New York Court of Appeals would reject Morse." (Id. at 6 (citing Order (Dkt. No. 40) at 26)) The Second Circuit went on to state that, "[s]ince the district court certified its decision for interlocutory review, the New York Court of Appeals has provided the missing 'persuasive evidence,' conclusively deciding the issue in McCabe v. 511 West 232nd Owners Corp., --- N.Y.3d ----, 2024 WL 5126078 (Dec. 17, 2024)." (Id.)

In McCabe, the New York Court of Appeals held that "'marital status' [under the NYCHRL] refers to 'whether a person is participating in a marriage, not the nature of one's relationship with another specific person.'" (Id. at 7 (citation omitted)) Because Plaintiff Hunter did "not allege that he was fired because of his status as married, unmarried, or divorced, but, instead, because of his marital status specifically to Williams," the Second Circuit held that the New York Court of Appeals' "reasoning [in McCabe] squarely resolves the question here [against Plaintiff]." (Id. (emphasis in original)) Accordingly, the Second Circuit vacated this Court's order denying Defendants' motion to dismiss and remanded the case for further proceedings. (Id. at 8)

## III. THE JUNE 10, 2025 CONFERENCE AND DISMISSAL ORDER

On April 25, 2025, Plaintiff's counsel – Abe George – moved to withdraw.[2] (Dkt. No. 60)

At a June 10, 2025 conference, this Court granted George's withdrawal motion. (June 10, 2025 Conf. Tr. (Dkt. No. 85) at 10-11) This Court gave Plaintiff sixty days to retain new counsel, and stated that if no lawyer was retained within that period, Plaintiff would proceed pro se. (Id.) This Court also explained that it intended to issue an order granting Defendant's motion to dismiss (Dkt. No. 31) in light of the Second Circuit's April 8, 2025 Order. (Id. at 7-8) The Court further instructed Plaintiff that "any motion for leave to amend [the Complaint] will be filed by . . . September 11." (Id. at 10)

Later that day, this Court issued an order granting Defendants' motion to dismiss and reiterating that "[a]ny motion for leave to file an amended complaint will be filed by **September 11, 2025**." (Dismissal & Scheduling Order (Dkt. No. 70) at 4 (emphasis in original)) The Order further states that, "[i]n the event that a motion for leave to amend is not filed by September 11, 2025, the Court will direct the Clerk of Court to close this case." (Id.)

## IV. PLAINTIFF'S FIRST MOTION FOR LEAVE TO AMEND

On September 11, 2025, Plaintiff – now proceeding pro se – filed an amended complaint (the "First Proposed Amended Complaint"). (Dkt. No. 73) Plaintiff had not moved for leave to do so.

On September 16, 2025, Defendants filed a motion to "close this case" because Plaintiff had not complied with the Court's June 10, 2025 order instructing Plaintiff that any motion for leave to amend must be filed by September 11, 2025. Plaintiff had instead simply

---

[2] Plaintiff also moved to seal a declaration submitted in support of the motion to withdraw. (Dkt. No. 59) The sealing motion is addressed below.

filed a proposed amended complaint, and had done so without seeking leave of Court. (Def. Mot. (Dkt. No. 74) at 1-2) Defendants also argued that an order closing the case was "appropriate because it appears that Plaintiff is being aided by an attorney despite his apparent presentation that he is proceeding pro se." (Id. at 2)

On September 18, 2025, Plaintiff moved for leave to amend, stating that he had "filed the Amended Complaint on September 11, 2025, believing that filing it directly was enough." (First Mot. for Leave to Amend (Dkt. No. 75) at 1) Plaintiff explained that he "did not realize that [he] also had to file a motion asking the Court for permission."[3] (Id.) In a September 22, 2025 order, this Court struck the First Proposed Amended Complaint (Dkt. No. 73) because it had been filed without leave of court. (Dkt. No. 76)

At an October 23, 2025 conference, this Court addressed Plaintiff's September 18, 2025 motion for leave to amend and Defendants' motion to close the case. (Oct. 23, 2025 Conf. Tr. (Dkt. No. 87) at 6)

As to Plaintiff's September 18, 2025 motion for leave to amend, this Court stated that it did not "think the motion for leave to amend is adequate." (Id. at 15) The Court noted that it "had issued an order requiring [P]laintiff to seek leave to amend the [C]omplaint by September 11, 2025" – and Plaintiff had filed that motion after this deadline. (Id. at 9 (citing Dismissal & Scheduling Order (Dkt. No. 70) at 4)) The Court further noted that "[t]he motion doesn't explain why Mr. Hunter believes he is entitled to the requested relief" – that is, leave to file an amended complaint. (Id. at 6) The Court then instructed Plaintiff that any motion for

---

[3] Plaintiff also stated that he had "never received the Court's earlier order signed . . . on June 10, 2025" directing him to file a motion for leave to amend. (Id.) But Plaintiff was present at the June 10, 2025 conference at which the Court verbally issued this order (Dkt. No. 85), and on August 8, 2025, this Court's Chambers sent Plaintiff a courtesy copy of the June 10, 2025 written order. (Dkt. No. 99)

leave to amend must "include the factual and legal bases for each new claim, demonstrating that there is a factual and legal basis for these new claims." (Id. at 10)

As to Defendants' motion to close the case, this Court stated that it did not intend "to close the case on the grounds that it looks like Mr. Hunter must be getting legal advice" despite his pro se status. (Id. at 15; see also id. at 14 ("I am not going to penalize Mr. Hunter for whatever legal advice he might be receiving. I intend to treat him as a pro se plaintiff.")) The Court further noted that while Plaintiff "did not obey [the Court's] June 10, 2025 order in terms of filing the motion for leave to amend, the fact of the matter is that he did file such a motion once this defect was brought to his attention." (Id. at 15) Accordingly, this Court stated that it would "give [Plaintiff] another opportunity to move for leave to amend." (Id. at 15)

## V. PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND

In an October 28, 2025 order, this Court directed Plaintiff to file his anticipated second motion for leave to file an amended complaint by December 8, 2025. (Dkt. No. 84) The Order provides that "Plaintiff's proposed amended complaint must set forth the factual basis for each new cause of action." (Id. at 1) The Order also states that Plaintiff's motion "must explain – as an initial matter – why he did not comply with this Court's June 10, 2025 scheduling order (Dkt. No. 70) directing him to file any motion for leave to amend by September 11, 2025." (Id. (directing Plaintiff "to show 'good cause' for his failure to comply with the Court's scheduling order")) Finally, the Order instructs Plaintiff that in his motion he "must also explain how the facts alleged in the proposed amended complaint are sufficient to establish each new cause of action." (Id. at 2)

On December 7, 2025, Plaintiff filed his second motion for leave to file an amended complaint.[4] (Dkt. No. 90) The "Second Proposed Amended Complaint" is attached to the motion; it is a sprawling document that asserts 21 claims and includes 270 paragraphs.[5] (Second Mot. for Leave to Amend, Ex. A (Second Proposed Am. Cmplt.) (Dkt. No. 90) at 15-63)

On January 22, 2026, Defendants filed their opposition (Dkt. No. 97) Plaintiff submitted a reply on February 4, 2026. (Dkt. No. 98)

## DISCUSSION

## I. SECOND MOTION FOR LEAVE TO AMEND

Defendants argue that Plaintiff's second motion for leave to amend should be denied because "Plaintiff's motion fails to comply with the Court's instructions," as set forth in this Court's June 10, 2025 and October 28, 2025 orders.[6] (Def. Opp. (Dkt. No. 97) at 16) According to Defendants, Plaintiff did not comply with the October 28, 2025 Order's requirements that he (1) "demonstrate good cause for his noncompliance with the Court's [June

---

[4] Plaintiff's first motion for leave to amend (Dkt. No. 75) will be denied as moot in light of this second motion for leave to amend.

[5] Many of these paragraphs present legal arguments. For example, Paragraph 235 of the Second Proposed Amended Complaint states that the "TWENTY-FIRST CAUSE OF ACTION IS NOT PREEMPTED BY THE COPYRIGHT ACT BECAUSE IT SEEKS TO VINDICATE RIGHTS QUALITATIVELY DIFFERENT FROM THOSE PROTECTED UNDER 17 U.S.C. §102 AND §106." (Second Mot. for Leave to Amend, Ex. A (Second Proposed Am. Cmplt.) (Dkt. No. 90) ¶ 235 (emphasis in original))

"[I]t is generally inappropriate to include a legal argument within a complaint." Jennings v. Hunt Companies, Inc., 367 F. Supp. 3d 66, 71 (S.D.N.Y. 2019) (citations, quotation marks, and alteration omitted).

[6] Defendants also argue that leave to amend should be denied because all of the claims in the Second Proposed Amended Complaint "are meritless and futile." (Id. at 20) This Court does not reach Defendants' futility argument at this time.

10, 2025 Dismissal] order" (id. at 18-19); and (2) "lay out the factual and legal bases for each new claim." (Id. at 16 (quotation marks omitted))

### A. "Good Cause" for Missing Filing Deadline

Plaintiff argues that he had "good cause" under Federal Rule of Civil Procedure 16(b)(4) for moving for leave to amend after the September 11, 2025 deadline. (Pltf. Mot. (Dkt. No. 90) at 1-2, 9-10) Plaintiff explains that he did not file a motion for leave to amend on September 11, 2025, because he believed that this Court had granted him leave to amend during the June 10, 2025 conference. (Id. at 1 (arguing that the Court had "advised [him] on the record that he would be permitted to amend"); see also id. (noting that the Court stated during the hearing that it was "going to give you leave to amend" (quoting June 10, 2025 Conf. Tr. (Dkt. No. 85) at 8))

Plaintiff states that he filed the First Proposed Amended Complaint on September 11, 2025 – without first moving for leave to do so – as a result of this understanding. (Id.) Plaintiff further states that once Defendants alerted him to the fact that this Court had instead required him to move for leave to amend, he promptly filed such a motion. (Id. at 10 (arguing that Plaintiff had "good cause" because he (1) "relied on the Court's explicit oral [statements]" and (2) "filed the motion within days" once "Defendants asserted a written motion was necessary"))

During the June 10, 2025 conference, however, this Court repeatedly and clearly instructed Plaintiff to file a motion for leave to file an amended complaint – rather merely the amended complaint – by September 11, 2025. (See June 10, 2025 Conf. Tr. (Dkt. No. 85) at 10-11) For example, the Court stated: "In the order that I issue today granting the motion to dismiss, I will provide for 90 days to move to amend the complaint. . . . [T]he order is going to

say that any motion for leave to amend will be filed by, to be specific, September 11." (Id. at 10) And at the close of the conference, the Court reiterated that a motion to amend was necessary:

> Just to recap, I'll issue an order today granting . . . [George's] motion to withdraw, giving Mr. Hunter until August 11, 2025, to arrange for a new lawyer; in the absence of which, he will proceed pro se from that point forward. And then, finally, set a 90-day limit, that being 9/11, for any motion to amend.

(Id. at 11)

Given Plaintiff's pro se status, however, the Court credits his assertion that he misunderstood the Court's instructions. It appears that he filed the First Proposed Amended Complaint on the date specified by the Court – September 11, 2025 – believing that no motion was necessary. (See First Mot. for Leave to Amend (Dkt. No. 75) at 1 (asserting that Plaintiff "did not realize that [he] also had to file a motion")) And after Defendants complained to the Court that Plaintiff had not filed a motion for leave to amend (see Def. Mot. (Dkt. No. 74) (filed on September 16, 2025)), Plaintiff filed his motion for leave to amend just two days later. (First Mot. for Leave to Amend (Dkt. No. 75) (filed on September 18, 2025))

"Whether good cause exists turns on the diligence of the moving party." Callahan v. Cnty. of Suffolk, 96 F.4th 362, 370 (2d Cir. 2024) (citations and quotation marks omitted). And a court may afford pro se litigants "leniency" in determining whether they acted diligently under Rule 16(b). See Case v. Clivilles, No. 12-CV-8122 (TPG), 2016 WL 5818577, at *3 (S.D.N.Y. Oct. 4, 2016) (citing Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010)); see also Stinson v. City Univ. of N.Y., No. 18-CV-5963 (RA), 2020 WL 2133368, at *3 (S.D.N.Y. May 4, 2020) ("[I]n considering whether Plaintiff acted diligently here, the court must give his pro se status 'special solicitude.'" (quoting Ruotolo v. I.R.S., 28 F.3d 6, 8 (2d Cir. 1994)).

Here, the record demonstrates that Plaintiff "misunderstood the scheduling order" and promptly filed the motion required by that order when he was alerted to his

misunderstanding. See Bensinger v. Denbury Res. Inc., No. 10-CV-1917, 2013 WL 3353975, at *3 (E.D.N.Y. July 3, 2013) (finding "good cause for failing to comply" with a scheduling order where an attorney "reasonably . . . misunderstood the scheduling order"). The Court concludes that Plaintiff has shown "good cause" by demonstrating that his non-compliance with the scheduling order "'stemmed from a[] mistake,'" and by quickly addressing that mistake. See Hurtado v. Hudson Fulton Corp., No. 20 Civ. 9133 (RA)(SLC), 2023 WL 2945846, at *4 (S.D.N.Y. Apr. 14, 2023) (quoting Eberle v. Town of Southampton, 985 F. Supp. 2d 344, 347 (E.D.N.Y. 2013)).

### B. Non-Compliance with October 28, 2025 Order Requiring that Motion to Amend Include the Factual and Legal Bases for Each New Claim

It is well established that "[d]istrict courts have the "inherent authority to manage their dockets" to promote "the efficient and expedient resolution of cases." Kowalchuck v. Metro. Transp. Auth., 94 F.4th 210, 214 (2d Cir. 2024). In exercising this authority, "a district court has the power to create motion procedures and to impose consequences for failure to comply with those procedures," so long as those procedures are "consistent with the Federal Rules of Civil Procedure." Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) (citing Fed. R. Civ. P. 83)); see also Kouakou v. Fideliscare New York, No. 11 Civ. 6714 (RJS)(DCF), 2013 WL 444926, at *1 (S.D.N.Y. Feb. 6, 2013) (denying without prejudice plaintiff's motion for leave to amend because plaintiff had not complied with order setting procedural requirements); Ferring B.V. v. Allergan, Inc., No. 12 CIV. 2650 RWS, 2013 WL 4082930, at *3 (S.D.N.Y. Aug. 7, 2013) (denying motion for leave to amend where court had issued an order that "outlined the procedures by which [plaintiff] could amend its Complaint," and plaintiff's motion did not comply with those procedures); Stone v. Courtyard Mgmt. Co., No. 99 CIV 4780 LTS KNF, 2001 WL 395159, at *1 (S.D.N.Y. Apr. 17, 2001) ("Plaintiff's failures to comply with the Order

and the Local Rules of Court provide sufficient basis to deny the motion to amend the complaint."); Lopez v. Cath. Charities of Archdiocese of N.Y., No. 00CV1247(AGS), 2000 WL 1725029, at *4 (S.D.N.Y. Nov. 20, 2000) ("When a plaintiff fails to comply with a court's orders regarding amending the complaint, the court may consider appropriate sanctions." (citation omitted)).

"[W]hile pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro se[] [litigants] have an obligation to comply with court orders." McDonald v. Head Crim. Ct. Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988). "When they flout that obligation they, like all litigants, must suffer the consequences of their actions." Id.

As discussed above, the Court instructed Plaintiff at the October 23, 2026 conference that any motion for leave to amend "must include the factual and legal bases for each new claim, demonstrating that there is a factual and legal basis for these new claims." (Oct. 23, 2026 Conf. Tr. (Dkt. No. 87) at 10) This instruction was particularly necessary in this case, given the withdrawal of Plaintiff's counsel, Plaintiff's new pro se status, the Second Circuit's explicit rejection of the only claim set forth in the Complaint, and a lack of clarity as to what new claims might be available to Plaintiff arising from the termination of his employment. This Court's October 28, 2025 Order reiterates that Plaintiff's motion for leave to amend "must explain how the facts alleged in the proposed amended complaint are sufficient to establish each new cause of action." (Oct. 28, 2025 Order (Dkt. No. 84) at 2)

Despite the Court's clear instruction that Plaintiff must explain the "factual and legal bases for each new claim," Plaintiff's second motion for leave to amend includes no such

explanation. Instead, Plaintiff simply asserts that the "amended complaint states viable claims under"

> - **Title VII** (sex and race discrimination; gender stereotyping; retaliation)
> - **Section 1981** (racial interference with contractual rights)
> - **NYSHRL and NYCHRL** (treated less well; broader standard)
> - **Third-Party Beneficiary Contract Law**
> - **Common-law and federal copyright infringement**
> - **Misappropriation of creative content**
> - **Unjust enrichment**
>
> Each is supported by well-pled factual allegations, documentary evidence, and Second Circuit precedent.

(Second Mot. for Leave to Amend (Dkt. No. 90) at 12-13 (emphasis in original))

Plaintiff's conclusory statement that each of the new claims is "supported by well-pled factual allegations, documentary evidence, and Second Circuit precedent" does not satisfy Plaintiff's obligation – under the Court's October 23 and October 28, 2025 orders – to "explain how the facts alleged in the proposed amended complaint are sufficient to establish each new cause of action." (Oct. 28, 2025 Order (Dkt. No. 84) at 2; see also Oct. 23, 2026 Conf. Tr. (Dkt. No. 87) at 10)

Because Plaintiff's second motion for leave to amend (Dkt. No. 90) does not "comply with the plain terms" of the Court's October 28, 2025 Order (Kouakou, 2013 WL 444926, at *1), the motion will be denied without prejudice.

**C. Rule 11 Sanctions**

Defendants contend that Plaintiff's second motion for leave to amend "is replete with citations that are unlocatable, improperly cited, superseded by statue, or materially misquote or misstate the law." (Def. Opp. (Dkt. No. 97) at 21 n.6) They cite to at least 29 examples of such improper citations in Plaintiff's motion papers. (Id.) In his Reply, Plaintiff does not respond in any fashion to Defendants' assertions about his improper citations. This Court has reviewed the allegedly improper citations identified by Defendants and agrees that many of them are improper. (See, e.g., Second Mot. for Leave to Amend (Dkt. No. 90) at 3 (purported quotation from Panther Partners Inc. v. Ikanos Commc'ns, Inc., 681 F.3d 114 (2d Cir. 2012) that does not appear in the case)).

Federal Rule of Civil Procedure 11(b)(2) provides that when someone engaged in litigation before the court submits a document to the court, that individual "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P. 11(b)(2). This rule applies to both attorneys and "pro se plaintiffs, as it covers anyone who signs a pleading, motion, or other paper." Simpson v. Putnam Cnty. Nat. Bank of Carmel, 112 F. Supp. 2d 284, 289 (S.D.N.Y. 2000) (citation omitted). "The fact that a litigant appears pro se does not shield him from Rule 11 sanctions[,] because 'one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" Malley v. New York City Bd. of Educ., 207 F. Supp. 2d 256, 259 (S.D.N.Y. 2002) (quoting Patterson v. Aiken, 841 F.2d 386, 387 (11th Cir. 1988)).

Accordingly, Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney [and pro se litigant] to conduct a reasonable inquiry into the viability of a [written motion] before it is signed," Gutierrez v. Fox, 141 F. 3d 425, 427 (2d Cir. 1998), and to

"read, and thereby confirm the existence and validity of, the legal authorities on which they rely." Park v. Kim, 91 F. 4th 610, 614 (2d Cir. 2024) (per curiam).

"There is [likewise] no doubt that sanctions can be imposed . . . for the citation to non-existent cases." United States v. Cohen, 724 F. Supp. 3d 251, 258 (S.D.N.Y 2024) (citation omitted). "A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law. Mata v. Avianca, Inc., 678 F. Supp. 3d. 443, 461 (S.D.N.Y. 2023) (citation and footnote omitted). Similarly, a pro se party's citation to an existing case for a proposition it does not support demonstrates that the pro se litigant did not conduct the "reasonable inquiry" required by Rule 11 (see Gutierrez, 141 F. 3d at 427) to confirm that his or her arguments and citations were "warranted by existing law or otherwise legally tenable." Park, 91 F. 4th at 615 (quotation marks and citation omitted)

Accordingly, Plaintiff is warned that any future such misconduct – including citation to cases that do not exist or citation to passages that do not exist in published cases – may result in Rule 11 sanctions, including dismissal of claims and/or monetary sanctions.

* * * *

In sum, Plaintiff's second motion for leave to amend (Dkt. No. 90) will be denied without prejudice. Plaintiff will be granted one, final opportunity to file an adequate motion for leave to amend.

## II. REMAINING OUTSTANDING MOTIONS

Two additional motions are pending before this Court: Defendants' motion to close the case (Dkt. No. 74), and Plaintiff's motion to seal a declaration submitted in support of the motion to withdraw filed by Plaintiff's former counsel (the "George Declaration"). (Dkt. No. 59)

Defendants' motion to close the case (Dkt. No. 74) will be denied without prejudice, given that Plaintiff will be afforded one final opportunity to seek leave to amend.

As for Plaintiff's motion to seal the George Declaration (Dkt. No. 59), "'it is well established that the public and the press have a qualified First Amendment right . . . to access certain judicial documents.'" United States v. Amadea, 23-CV-9304 (DEH), 2025 WL 81828, at *1 (S.D.N.Y. Jan. 10, 2025) (alteration and omission in original) (quoting Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006)). "Filings that are 'relevant to the performance of the judicial function and useful in the judicial process' are considered 'judicial documents' to which a presumption in favor of public access attaches." Alix v. McKinsey & Co., Inc., 739 F. Supp. 3d 172, 193 (S.D.N.Y. 2024) (quoting Lugosch, 435 F.3d at 119). However, "[a] party may overcome the presumption of access by demonstrating that sealing will further other substantial interests[,] such as a third party's personal privacy interests, the public's safety, or preservation of attorney-client privilege." Bernsten v. O'Reilly, 307 F. Supp. 3d 161, 168 (S.D.N.Y. 2018) (citations and quotation marks omitted)

Given that "preservation of attorney-client privilege" constitutes a "substantial interest" justifying sealing, id., "[c]ourts in this district routinely allow documents in support of motions to withdraw as counsel to be filed ex parte and under seal where necessary to preserve the higher values of confidentiality of the attorney-client relationship between a party and its counsel." Scala v. Little Feet Childcare Ctr. LLC, No. 23-CV-9279 (KMK) (VR), 2024 WL 3342604, at *1 (S.D.N.Y. July 9, 2024) (collecting cases).

This Court has reviewed the George Declaration and determined that it discloses privileged attorney-client communications, "which should not be divulged on the public docket." Sound Around, Inc. v. Friedman, No. 24-CV-1986 (DLC) (KHP), 2025 WL 3281434, at *3

(S.D.N.Y. Nov. 25, 2025). The Court further concludes that sealing the George Declaration will promote the "substantial interest" of "preservation of attorney-client privilege." Bernsten, 307 F. Supp. 3d at 168 (citations and quotation marks omitted). Accordingly, Plaintiff's motion to seal will be granted.

## CONCLUSION

For the reasons stated above, Plaintiff's first motion for leave to amend (Dkt. No. 75) is denied as moot; Plaintiff's second motion for leave to amend (Dkt. No. 90) is denied without prejudice; Defendants' motion to close the case (Dkt. No. 74) is denied without prejudice; and Plaintiff's motion to seal the George Declaration (Dkt. No. 59) is granted. The Clerk of Court is directed to terminate the motions (Dkt. Nos. 59, 74, 75, 90).

Any renewed motion for leave to file an amended complaint is due on **November 16, 2026**. Defendants' opposition is due on **December 14, 2026**. Plaintiff's reply, if any, is due on **January 12, 2026**. In the event that a renewed motion for leave to amend is not filed by November 16, 2026, the Court will direct the Clerk of Court to close this case.

Plaintiff should attach the proposed amended complaint as an exhibit to his motion papers. The proposed amended complaint should not include legal argument. In a memorandum of law accompanying the motion, Plaintiff should set forth the factual and legal bases for each new cause of action, explaining how the amended complaint's factual allegations are legally sufficient to support each new cause of action. Plaintiff's memorandum of law should not exceed thirty double-spaced pages. Defendants may file an opposition brief not exceeding

thirty double-spaced pages. Plaintiff may file a reply of not more than fifteen double-spaced pages.

Dated: New York, New York
September 30, 2026

SO ORDERED.

Paul G. Gardephe
United States District Judge